## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, | CIVIL ACTION NO. |
| *Plaintiff*, | 4:20-cv-00117-SEB-DML |
| v. | |
| MICHAEL CAMPBELL, KIAH JACOBS, AND ONECIS INSURANCE COMPANY, | |
| *Defendants*. | |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Michael Campbell ("Campbell"), Kiah Jacobs ("Jacobs"), and OneCIS Insurance Company ("OneCIS") (collectively, "Defendants") submit their Brief in Support of Defendants' Motion to Dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) in response to Plaintiff The Hartford Steam Boiler Inspection and Insurance Company's ("Plaintiff" or "HSB") Complaint in accordance with Local Rule 7-1.

Dated: June 26, 2020

Respectfully submitted,

*/s/ Jackie R. Clowers*
Jackie R. Clowers, 31700-22
jclowers@afpfirm.com
APPLEGATE FIFER PULLIAM LLC
428 Meigs Avenue, P.O. Box 1418
Jeffersonville, Indiana 47130
812.590.1245 Telephone
812.590.1245 Facsimile

Yasser A. Madriz (*pro hac vice* forthcoming)
ymadriz@mcguirewoods.com
Meghaan C. Madriz (*pro hac vice* forthcoming)

mmadriz@mcguirewoods.com
A. Wolfgang McGavran (*pro hac vice* forthcoming)
wmcgavran@mcguirewoods.com
MCGUIREWOODS LLP
600 Travis, Suite 7500
Houston, Texas  77002
(832) 255-6361 Telephone
(832) 214-9931 Facsimile

**ATTORNEYS FOR DEFENDANTS MICHAEL CAMPBELL, KIAH JACOBS, AND ONECIS INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on this 26th day of June 2020.

*/s/ Jackie R. Clowers*
Jackie R. Clowers

## TABLE OF CONTENTS

I.   SUMMARY ..................................................................................................... 1

II.  LEGAL STANDARD ...................................................................................... 2

III. ARGUMENTS AND AUTHORITIES.......................................................... 3

   A.   This Court should dismiss HSB's claims seeking to enforce the so-called "Non-Compete" agreement because the employment restrictions at issue are overbroad and unenforceable.................................... 3

      (i)   *The Restrictive Covenant Agreements are not reasonable because their restrictions exceed any legitimate business interest of HSB, are geographically overbroad, are overly restrictive on Campbell and Jacobs, and harm the public.* ............................................................. 4

      (ii)  *This Court should not modify the Restrictive Covenant Agreements to craft a more reasonable restriction.* ...................................... 8

   B.   This Court should dismiss HSB's trade secret misappropriation claims because no specific instances of misuse are alleged. ............................ 9

   C.   This Court should dismiss HSB's breach of non-disclosure obligations claim against Jacobs because the Complaint fails to allege any disclosure or use. ..................................................................................... 13

   D.   This Court should dismiss HSB's tortious interference claims because Defendants' conduct was justified and lawful, HSB's allegations are conclusory, and HSB's claims are preempted. .................................... 14

      (i)    *Defendants' conduct with respect to HSB's employees and customers was justified.* ............................................................. 14

      (ii)   *HSB fails to allege an independent illegal action.* .................................. 16

      (iii)  *IUTSA preempts HSB's tortious interference with customers claim.* ...... 17

      (iv)   *There are insufficient allegations to support a claim for tortious interference with HSB's workforce or customers against the Individual Defendants.* ............................................................. 18

   E.   This Court should dismiss HSB's "employee piracy" claim because it is not an independent cause of action and HSB's unfair competition claim because the IUTSA preempts that claim. .......................................... 19

      (i)    *"Employee Piracy" is not a recognized, independent cause of action.* ....... 19

      (ii)   *HSB's unfair competition claim is preempted.* ....................................... 20

   F.   HSB's conversion claim should be dismissed because it is preempted by the IUTSA.......................................................................................... 22

      **G.**    **HSB's breach of fiduciary duty claim should be dismissed because it is preempted and not adequately alleged. ........................................................ 23**

**IV.**    **CONCLUSION** ............................................................................................. **25**

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Saye v. Old Hill Partners, Inc.*,
  478 F. Supp. 2d 248 (D. Conn. 2007) ...................................................................................3

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ..............................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................2, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................2, 18

*Bragg v. City of Muncie*,
  930 N.E.2d 1144 (Ind. Ct. App. 2010) ..............................................................................16

*Braman Chem. Enters., Inc. v. Barnes*,
  No. CV064020633S, 2006 WL 3859222 (Conn. Super. Ct. Dec. 12, 2006) .................5, 7, 8

*Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.*,
  719 F. Supp. 1072 (M.D. Fla. 1989) ..................................................................................19

*Dicen v. New Sesco, Inc.*,
  839 N.E.2d 684 (Ind. 2005) .................................................................................................7

*Distrib. Serv., Inc. v. Stevenson*,
  16 F. Supp. 3d 964 (S.D. Ind. 2014) ....................................................................................6

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
  71 F. Supp. 3d 525 (D. Md. 2014) .....................................................................................19

*Felsher v. Univ. of Evansville*,
  755 N.E.2d 589 (Ind. 2001) ...............................................................................................21

*Firth v. Yahoo! Inc.*,
  No. 3:10CV75-PPS/CAN, 2010 WL 2696286 (N.D. Ind. July 2, 2010) ............................23

*Gartner Grp. Inc. v. Mewes*,
  No. CV91 0118332 S, 1992 WL 4766 (Conn. Super. Ct. Jan. 3, 1992) ...............................8

*Harvest Life Ins. Co. v. Getche*,
  701 N.E.2d 871 (Ind. Ct. App. 1998) ...........................................................................15, 16

*HDNet LLC v. N. Am. Boxing Council*,
    972 N.E.2d 920 (Ind. Ct. App. 2012) ......................................................................21, 22, 24

*Heraeus Med., LLC v. Zimmer, Inc.*,
    135 N.E.3d 150 (Ind. 2019) ...................................................................................................9

*Honda Mfg. of Ind. LLC v. Custom Machs., Inc., et al.*,
    No. 115CV00042TWPMPB, 2017 WL 4956427 (S.D. Ind. Nov. 1, 2017) ..........................23

*Indep. Tube Corp. v. Copperweld Corp.*,
    691 F.2d 310 (7th Cir. 1982), rev'd, 467 U.S. 752 (1984) ..................................................20

*Indus. Packaging Supplies, Inc. v. Channell*,
    No. 18-CV-00165, 2018 WL 2560993 (N.D. Ill. 2018) .............................................11, 12, 13

*Ineo, LLC v. Lenehan*,
    No. MMXCV186019598S, 2018 WL 1386221 (Conn. Super. Ct. Feb. 20,
    2018) .......................................................................................................................................6

*Inst. for Int'l Educ. of Students v. Qian Chen*,
    380 F. Supp. 3d 801 (S.D. Ind. 2019) .............................................................................21, 22

*Johnson v. Wal-Mart Stores, Inc.*,
    588 F.3d 439 (7th Cir. 2009) ..................................................................................................2

*Konecranes, Inc. v. Davis*,
    No. 1:12-CV-01700-JMS, 2013 WL 1566326 (S.D. Ind. Apr. 12, 2013) .........................15, 21

*Kopka, Landau & Pinkus v. Hansen*,
    874 N.E.2d 1065 (Ind. Ct. App. 2007) ..................................................................................23

*Larsen Chelsey Realty Co. v. Larsen*,
    232 Conn. 480, 656 A.2d 1009 (1995) ...................................................................................20

*LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*,
    __ F.Supp.3d __, 2020 WL 1934178 (N.D. Ind. Apr. 21, 2020) ................................10, 11, 13

*loanDepot.com v. CrossCountry Mortg., Inc.*,
    399 F. Supp. 3d 226 (D.N.J. 2019) .......................................................................................19

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) .............................................................................................2, 24

*Mercho-Roushdi-Shoemaker-Dilley Thoraco-Vascular Corp. v. Blatchford*,
    900 N.E.2d 786 (Ind. Ct. App. 2009) .....................................................................................4

*Morgan Asset Holding Corp. v. CoBank, ACB*,
    736 N.E.2d 1268 (Ind. Ct. App. 2000) .................................................................................15

*Mourning v. Allison Transmission, Inc.*,
 72 N.E.3d 482 (Ind. Ct. App. 2017)............................................................14

*N. Elec. Co. v. Torma*,
 819 N.E.2d 417 (Ind. Ct. App. 2004)..........................................................24

*N. L. R. B. v. Rohlen*,
 385 F.2d 52 (7th Cir. 1967) .......................................................................20

*New Haven Tobacco Co. v. Perrelli*,
 18 Conn. App. 531, 559 A.2d 715 (1989) .....................................................4

*Nikish Software Corp. v. Manatron, Inc.*,
 801 F. Supp. 2d 791 (S.D. Ind. 2011)...................................................14, 17

*Patriot Homes, Inc. v. Forest River Hous., Inc.*,
 489 F. Supp. 2d 865 (N.D. Ind. 2007) ............................................17, 21, 22

*Physician's Surrogacy, Inc. v. German*,
 No. 17cv718-MMA (WVG), 2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan 31,
 2018) .......................................................................................................13

*Pierce v. Zoetis, Inc.*,
 818 F.3d 274 (7th Cir. 2016) .....................................................................17

*Potts v. Review Bd. of Ind. Emp't Sec. Div.*,
 475 N.E.2d 708 (Ind. Ct. App. 1985).........................................................23

*Remy, Inc. v. Tecnomatic S.P.A.*,
 No. 1:11-CV-00991-SEB, 2014 WL 2882855 (S.D. Ind. June 24, 2014) ............23

*Smith v. Biomet, Inc.*,
 384 F. Supp. 2d 1241 (N.D. Ind. 2005) ................................................14, 16

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
 947 F.3d 464, 469 (7th Cir. 2020) ..............................................................24

*Thompson v. Huntington*,
 69 F. Supp. 2d 1071 (S.D. Ind. 1999)...........................................................2

*Trail v. Boys & Girls Clubs of Nw. Ind.*,
 845 N.E.2d 130 (Ind. 2006) .......................................................................18

*Wright v. Associated Ins. Cos. Inc.*,
 29 F.3d 1244 (7th Cir. 1994) .......................................................................3

**Statutes**

18 U.S.C. § 1839(5)(A)-(B)........................................................................10

**Other Authorities**

Fed. R. Civ. P.

    8(a)(2)............................................................................................................2

    12..............................................................................................................10

    12(b)(6) .........................................................................................................2

## I.  SUMMARY

This lawsuit is nothing but an attempt of a company (HSB) to get back at two of its former employees (Campbell and Jacobs) and to stop lawful competition with the former employees' new employer (OneCIS)—a competitor of HSB.  HSB is, by its own account and as alleged in the Complaint, hemorrhaging employees and losing business to OneCIS, and has been well before Campbell and Jacobs (collectively, the "Individual Defendants") decided to join OneCIS' ranks.  Indeed, despite filing a lawsuit purportedly spurred by Campbell's and Jacobs' actions, the sole former HSB client that HSB references in its Complaint ended its relationship with HSB long *before* Campbell and Jacobs joined OneCIS.  In other words, rather than competing with OneCIS in the market, HSB has brought this suit and done so on, to put it mildly, thin facts to support its allegations.

Indeed, HSB's Complaint contains many unfounded and downright misleading allegations.  However, Defendants need not factually disprove the allegations contained in HSB's Complaint to defeat HSB's claims.[1]  To the contrary, HSB simply fails to state a claim on which relief can be granted for all of its causes of action.  For instance, HSB seeks to enforce restrictive covenants that purport to restrict Campbell's and Jacobs' right to employment nationwide—and beyond—regardless of whether that work is in competition with HSB or related to the Individual Defendants' scope of HSB employment.  Those restrictions are, on their face, overbroad and unenforceable.  HSB's trade secret misappropriation claims likewise should be dismissed because HSB has failed to adequately allege any misappropriation of its trade secrets by Defendants.  Many of HSB's other claims—including tortious interference, unfair competition, and conversion—should be dismissed because they are preempted by HSB's trade secret claim.  As more fully

---

[1] Defendants reserve the right to contest any of the factual allegations contained in the Complaint.

discussed below, other problems requiring dismissal exist with HSB's claims.  Accordingly, this Court should dismiss HSB's claims for the reasons set out in this Motion.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's suit faces dismissal if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In turn, Federal Rule of Civil Procedure 8 establishes that, in order to state a claim for relief, the relevant pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Further, "[i]n order to survive a motion to dismiss, the complaint must make factual allegations that 'raise a right to relief above the speculative level.'" *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). And, while well-pleaded facts are accepted as true in deciding a motion to dismiss, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1951.  Finally, "[t]he plaintiff must respond meaningfully to the motion to dismiss, clearly establishing the legal basis for her claim, in order to stave off dismissal." *Thompson v. Huntington*, 69 F. Supp. 2d 1071, 1074 (S.D. Ind. 1999) (citing *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir.1999)).

### III. ARGUMENTS AND AUTHORITIES

**A.     This Court should dismiss HSB's claims seeking to enforce the so-called "Non-Compete" agreement because the employment restrictions at issue are overbroad and unenforceable.**

At the core of HSB's Complaint is the idea that Campbell and Jacobs are violating a restrictive covenant in their respective Restrictive Covenant Agreement with HSB. *See* Pl.'s Compl. at ¶¶ 45-47.  In particular, a supposed "non-competition"[2] obligation in the Restrictive Covenant Agreements forms the basis of HSB's second (breach of non-compete obligations), third (employee piracy and unfair competition), and fourth (tortious interference with HSB's workforce) causes of action.  *See* Pl.'s Compl. at ¶¶ 79-98.  These claims should be dismissed because the non-competition covenant in the Restrictive Covenant Agreements is patently overbroad, unreasonable, and—as a result—unenforceable under both Connecticut[3] and Indiana law.[4]

"[B]ecause of their restrictive effect on trade in the free market, Connecticut courts have long recognized that non-compete covenants between employers and employees are subject to stricter review than other types of contracts . . . .  Therefore, as non-compete covenants may be against public policy, ... [they] are enforceable only if their imposed restraint is *reasonable." Saye*

---

[2] For purposes of this Motion, Defendants refer to the restriction in the Restrictive Covenant Agreements as a "non-competition covenant"—which is the generic term used to describe a restrictive covenant that prohibits an employee from working in some capacity. However, for the reasons discussed herein, Defendants deny that the non-competition covenant at issue in this case is a valid and enforceable non-compete under applicable law and maintain that the restriction is more broadly a general industry-related prohibition against employment nationwide.

[3] One fact omitted from the Complaint is that the Restrictive Covenant Agreements state that they are governed by Connecticut law.  *See* Jacobs' Agreement, attached as <u>Exhibit A</u> ("[T]he terms of this Agreement shall be governed and construed in accordance with the laws of the State of Connecticut."); Campbell's Agreement, attached as <u>Exhibit B</u> (same).  This Court may consider the full text of the Restrictive Covenant Agreements despite Plaintiff's failure to attach them to the Complaint because they are referred to throughout the Complaint.  *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.") (citation omitted).

[4] While the Restrictive Covenant Agreements include a Connecticut choice of law, this Motion addresses the non-compete covenant's unenforceability under both Connecticut and Indiana law.  Because the non-compete covenant is unenforceable regardless of which state's law applies, a choice of law analysis is unnecessary.

*v. Old Hill Partners, Inc.*, 478 F. Supp. 2d 248, 267 (D. Conn. 2007) (emphasis in original) (citations and quotations omitted). "There are five criteria by which the reasonableness of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests. *New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 533–34, 559 A.2d 715, 717 (1989) (citing *Scott v. Gen. Iron & Welding Co.*, 171 Conn. 132, 137, 368 A.2d 111 (1976)). If a restriction is unreasonable under just one of these criteria, it is unenforceable. *Id.* at 534.

Like Connecticut, Indiana courts enforce a covenant restricting an employee's ability to work after the termination of employment only if the restriction is reasonable. "In considering what is reasonable, regard must be paid to three factors: (1) whether the agreement is wider than necessary for the protection of the employer in some legitimate interest; (2) the effect of the agreement upon the employee; and (3) the effect of the agreement upon the public." *Mercho-Roushdi-Shoemaker-Dilley Thoraco-Vascular Corp. v. Blatchford*, 900 N.E.2d 786, 796 (Ind. Ct. App. 2009).

> **(i)  The Restrictive Covenant Agreements are not reasonable because their restrictions exceed any legitimate business interest of HSB, are geographically overbroad, are overly restrictive on Campbell and Jacobs, and harm the public.**

The first question this Court must answer is whether the restriction on the employment at issue is reasonable. For several reasons, the answer is a resounding "no." Throughout the Complaint, HSB argues that the Restrictive Covenant Agreements prevent work that is in "competition" with HSB. *See, e.g.,* Pl.'s Compl. at ¶ 45 ("[E]ach Individual Defendant ***agreed not to accept any competitive employment*** for a period of six months. . . .") (emphasis added) and ¶

4

80 ("Both Campbell and Jacobs signed Restrictive Covenant Agreements, under which they **agreed not to compete** with HSB. . . .") (emphasis added).

The truth, however, is that the Restrictive Covenant Agreements are much broader than HSB lets on.  Each of the Restrictive Covenant Agreements provides:

> That for a period of six months after termination of employment with the Company, when said termination is occasioned by the Employee, the Employee will not accept employment in any of the states, commonwealths, territories or possessions of the United States of America; or from any company or organization whose corporate headquarters is located within the states, commonwealths, territories or possessions of the United States of America, if such employment is offered because of the knowledge, skill or credentials obtained as a result of the aforementioned training.

*See* Pl.'s Compl. at ¶ 46.  In other words, the restriction is not limited, as alleged by HSB, to work "competitive" with HSB.  Indeed, the term "competition" is not used in the Restrictive Covenant Agreements at all.  Rather, the non-competition covenant in the Restrictive Covenant Agreements seeks to bar *any employment* that is offered to Campbell and Jacobs because of the "knowledge, skill or credentials obtained as a result" of HSB's training—regardless of the capacity in which the Individual Defendants work or who they work for.

What sort of work could theoretically be enjoined by this overbroad restriction? One example would be employment with a boiler manufacturer (*i.e.*, a customer of HSB)—that does not compete with HSB's inspection or insurance services—but for whom knowledge of relevant standards is an attractive employment trait. A second example would include work for a regulatory body—that, again, does not compete with HSB—but that wants to hire an employee experienced in the type of work the Individual Defendants performed for HSB.  HSB has no legitimate interest in restricting work so broadly. *See, e.g., Braman Chem. Enters., Inc. v. Barnes*, No. CV064020633S, 2006 WL 3859222, at *8 (Conn. Super. Ct. Dec. 12, 2006) (rejecting restriction on employment that went beyond protecting former employer's legitimate business interests).

Courts applying Indiana law would similarly find such a restriction overbroad.  Indeed, even when a restriction is limited to competing companies, courts applying Indiana law regularly refuse to enforce covenants barring employment without regard for the capacity of the employment.  *See, e.g., Distrib. Serv., Inc. v. Stevenson,* 16 F. Supp. 3d 964, 973–74 (S.D. Ind. 2014) ("The bottom line is that the plain language of the Non–Compete Provision would prohibit Mr. Stevenson from being an 'employee' of an entity who engages in 'Competitive Business Activity,' whether he is in sales, works as a janitor, or maintains the second employer's lawn. Thus, it is overbroad and unenforceable.") (citation omitted).  As explained above, the Restrictive Covenant Agreements bar employment in any capacity and with any employer so long as the Individual Defendants' training was a factor in their being hired.

Additionally, the Restrictive Covenant Agreements are overbroad because enforcing them would essentially render the Individual Defendants unemployable in their industry anywhere in the United States or its territories.  *Ineo, LLC v. Lenehan*, No. MMXCV186019598S, 2018 WL 1386221, at *10 (Conn. Super. Ct. Feb. 20, 2018) ("Given the breadth of the restrictions set forth in the Agreement, the court cannot find that the defendant is able to take advantage of any other employment opportunities in the mobility and relocation industry without running afoul of the covenants sought to be imposed by the plaintiff. As a result, the court holds that the restrictive covenants set forth in the Agreement may not be enforced against the defendant as a matter of law."). Thus, these Restrictive Covenant Agreements are overbroad and unenforceable.

Further, the geographical restriction that HSB seeks to enforce is not reasonable.  The Restrictive Covenant Agreements seek to prevent work across the United States and beyond.  *See* <u>Exs</u>. A and B.  The Complaint conclusively states that HSB competes with other companies, including OneCIS, throughout the United States and internationally. However, it contains ***no***

*allegations* regarding the geographic area served by the Individual Defendants while they worked for HSB, aside from a passing allegation that Campbell, at all times relevant to this action, "resided and worked in the State of ***Indiana***, and engaged in the wrongful conduct described in this Complaint in the State of ***Indiana***" and that Jacobs "engaged in the wrongful conduct described in this Complaint in the State of ***Indiana***." Pl.'s Compl. at ¶¶ 18-19 (emphasis added). Based on HSB's allegations, this Court cannot possibly find that a nationwide restriction is reasonable. Therefore, the restriction is not enforceable under Connecticut law. *See, e.g., Braman Chem. Enters., Inc.*, 2006 WL 3859222, at *8 ("The 50-mile radius in this case is substantially more than is necessary to provide a 'fair protection' of the plaintiff's business. . . .[T]he geographical restriction as written is designed less to protect the plaintiff's legitimate interests and more to preserve an enormous area free of competition that seals the fate of this non-compete. The court concludes that because of the geographical restriction, the non-compete may not be enforced against this defendant."). And, applying Indiana law would lead to the same result. *See, e.g., Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 689 (Ind. 2005) ("Restricting Dicen from working in the land remediation business anywhere in the United States for two years after he left New Sesco exceeds the bounds of reasonableness, especially when Dicen's contacts were in a limited number of states.").

Finally, enforcing the broad restrictions on work as HSB seeks would thwart public policy. In its Complaint, HSB makes clear that the type of work it seeks to enjoin is critical for public safety. *See, e.g.,* Pl.'s Compl. at ¶ 21 (recounting the explosion of the steamboat *Sultana* which "claimed over 1,800 lives in what is widely considered the worst boiler disaster in history."); ¶ 22 (explaining that the services are aimed at manufacturers of "pressure-retaining vessels such as air tanks, propane tanks, boilers, and other such industrial machines" and include "world-class

inspection and related services to help them avoid losses. . . .").  Obviously, preventing the Individual Defendants from performing or facilitating this type of work for months on end disserves the public interest in safety.  And, to state the obvious, enforcing a restrictive covenant to put two individuals out of work in the midst of record-setting unemployment caused by the COVID-19 pandemic is hardly serving the public good.

      **(ii)**     **This Court should not modify the Restrictive Covenant Agreements to craft a more reasonable restriction.**

The next question is whether this Court should come to HSB's rescue by reforming the non-competition covenant in the Restrictive Covenant Agreements to create a more reasonable restriction on employment, or to match the facts of this case.  Again, the answer to this question is "no."

Under Connecticut law, "[s]everance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants. Where the covenant is intended by the parties to be an entirety, it cannot properly be so divided by a court that it will be held good for a certain area but invalid for another." *Gartner Grp. Inc. v. Mewes*, No. CV91 0118332 S, 1992 WL 4766, at *4 (Conn. Super. Ct. Jan. 3, 1992) (quoting *Beit v. Beit*, 15 Conn. Supp. 191, 195–96 (Super. Ct. 1947), aff'd, 135 Conn. 195, 63 A.2d 161 (Conn. 1948)).  Further, such reformation is only allowed when the contract itself provides that its terms are severable. *See id.*

Therefore, Connecticut law does not allow a party like HSB to draft an overbroad restraint on an employee's right to work and then later ask a court to enforce a more narrow version of that agreement.  *See, e.g., Braman Chem. Enters., Inc. v. Barnes*, No. CV064020633S, 2006 WL 3859222, at *9 (Conn. Super. Ct. Dec. 12, 2006) ("To accept the suggestion that the court should enforce a narrowed version of the non-compete, with the nature and scope of the narrowing to be undertaken by the court, would be to encourage employers to cast their nets as widely as possible,

secure in the knowledge that while some employees might effectively be deterred from competing by such an agreement, the burden would be on those who chose to compete to convince the court to reform the contractual agreement.").

Similarly, under Indiana law, the non-competition covenant in the Restrictive Covenant Agreements cannot be re-written to provide for different restrictions than what was originally included by HSB. *See Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 156 (Ind. 2019) ("Indiana's 'blue pencil doctrine' is really an eraser—providing that reviewing courts may delete, but not add, language to revise unreasonable restrictive covenants. And parties to noncompetition agreements cannot use a reformation clause to contract around this principle."). There is no language in the non-competition covenant that can be "erased" to make the restriction sufficiently reasonable to pass judicial muster.

In this case, this Court cannot cure the Restrictive Covenant Agreements' overreaching restraint on trade and employment. First, there is no language in the restrictive covenant that could be struck so as to leave a reasonable restriction on employment. For example, striking the geographic restriction would lead to no restriction at all. Similarly, no language could be struck out that would make the restrictive covenant only apply to employment in direct competition with HSB or limit the scope of activities to be restrained. Second, even were this not the case, the Restrictive Covenant Agreements do not contain any language that would allow such reformation or severance in the first place, as required under Connecticut law. Accordingly, this Court should dismiss the claims based upon the Restrictive Covenant Agreements, which include HSB's second, third, and fourth causes of action in the Complaint.

**B.    This Court should dismiss HSB's trade secret misappropriation claims because no specific instances of misuse are alleged.**

Count one of HSB's Complaint purports to assert a claim for trade secret misappropriation

under the Defend Trade Secrets Act ("DTSA") and "Indiana State Law." *See* Pl.'s Compl. at 15-16.  Although not spelled out in the Complaint, Defendants assume that HSB's state law claims are brought under the Indiana Uniform Trade Secret Act ("IUTSA").  The elements of a claim under the DTSA and IUTSA are similar. *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*, __ F.Supp.3d __, 2020 WL 1934178, at *10 (N.D. Ind. Apr. 21, 2020) (citation omitted). ("The elements of misappropriation claims under the DTSA and IUTSA are similar. . . .").  A key element of each potential claim is the existence of a trade secret and its misappropriation.  The Complaint fails to adequately allege any actual misappropriation by Defendants.

The DTSA defines "misappropriation" as either the "acquisition of a trade secret of another . . . by improper means" or the "disclosure or use of a trade secret of another without express or implied consent. . . ." 18 U.S.C. § 1839(5)(A)-(B). Similarly, IUTSA defines "misappropriation" as "disclosure or use of a trade secret without consent by one who knew or had reason to know the trade secret was 'acquired under circumstances giving rise to a duty to maintain secrecy or limit its use' or derived from one who 'owed a duty to the person seeking relief to maintain its secrecy or limit its use.'" IND. CODE § 24–2–3–1.

Courts regularly grant motions to dismiss trade secret claims under Federal Rule of Civil Procedure 12 where the plaintiff fails to adequately allege misappropriation.  For example, in *Packaging Corporation of America, Inc. v. Croner*, a salesman was accused by his former employer of misappropriating trade secrets. 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020).  With respect to the alleged misappropriation, the court first found that the employee had ***acquired*** the trade secrets through proper means (*i.e*., as an employee). *Id.*  Therefore, "the misappropriation analysis hinge[d] on whether PCA adequately allege[d] that Croner ha[d] ***disclosed or used the***

*trade secrets* without express or implied consent." *Id.* (emphasis added). The court then found that the plaintiff did not adequately allege such disclosure and use:

> PCA primarily bases the allegations in its complaint of unauthorized disclosure on the fact that Croner admits to having solicited some of his former clients from PCA and on the inference that "because Croner has not returned any information to PCA, Croner is using PCA's Confidential Information and Trade Secrets in connection with these solicitations." The complaint provides no additional factual support for this assertion, howeve*r. But even if the Court infers Croner's possession of the information in question, mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets, even when considered in conjunction with solicitations of former clients.*

*Id.* (citation omitted) (emphasis added). Further, the court noted the fact that the plaintiff had lost business "fails to support a plausible inference that Croner has misappropriated trade secrets. By all accounts, Croner is an effective salesman; he doubtless had strong relationships with many of his clients." *Id.* at 1069. Accordingly, the trade secret claim was dismissed. *Id.* at 1078; *see also Indus. Packaging Supplies, Inc. v. Channell*, No. 18-CV-00165, 2018 WL 2560993, at *2 (N.D. Ill. 2018) (dismissing trade secret claim and explaining that "Industrial Packaging has alleged that Channell and other Axis employees used to work at Industrial Packaging, where they had access to its trade secrets and that Axis offers the same services and targets the same clients as Industrial Packaging. But this is not enough to justify its otherwise unsupported suspicions that the defendants used or disclosed the information they had access to while working for Industrial Packaging.").

In another recent trade secret case, a plaintiff brought claims under the DTSA and IUTSA alleging misappropriation of its "encryption code, its network architecture, and its network engineering." *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*, __ F.Supp.3d __, 2020 WL 1934178, at *10. The plaintiff alleged, among other things, that some of the defendant's employees had previously had access to the information at issue and that the defendant "appears" to have misappropriated that information. *Id.* Despite these allegations, the court held that the plaintiff

did not present even a negligible likelihood of success on the merits.  *See id.* at *10-11.  After all, "having had access to trade secrets and misappropriating trade secrets are two entirely different allegations."  *Id.* at 11.  Further, "mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets."  *Id.* (quoting *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1066 and citing *Indus. Packaging Supplies, Inc.*, 2018 WL 2560993, at *2) (holding that allegations that the defendants, former employees with access to trade secrets, left for a competitor offering the same services to the same clientele are "not enough to justify [the plaintiff's] otherwise unsupported suspicions that the defendants used or disclosed" trade secrets)).

In this case, HSB fails to offer anything besides conclusory allegations regarding use and disclosure of any information.  In particular, the Complaint states that "[s]ince leaving HSB, the Individual Defendants have used that information, and assisted OneCIS in using that information, to steal HSB's customers and business" and that "Defendants intentionally, fraudulently, maliciously, and oppressively misappropriated, used, and continue to use, HSB's Trade Secrets in the ways described in this Complaint – including, but not limited to, the Individual Defendants' disclosure of Trade Secrets to OneCIS and OneCIS's intentional interference with HSB's highly valued team of inspectors."  Pl.'s Compl. at ¶¶ 8, 73.  The closest HSB gets to a specific allegation of use is its blanket and unsupported assertion that "Campbell provided Byers, and thus OneCIS, with sensitive pricing and revenue information belonging to HSB.[5]  This information enabled OneCIS to gain improper insight into HSB's business, thereby unfairly putting HSB at a competitive disadvantage."  Pl.'s Compl. at ¶ 56.

These allegations are almost entirely devoid of any <u>specific</u> factual allegations.  Essentially, HSB asks this Court to infer that the alleged trade secrets were misappropriated based solely on

---

[5] HSB also fails to allege how this information allegedly qualifies as a trade secret, or even what it is comprised of, as well as how HSB was harmed.

the Individual Defendants' access to certain information *while at HSB* and HSB's loss of a single customer *almost two years ago in 2018*, Duke Energy, which HSB alleges it lost well *before* the Individual Defendants even left to work for OneCIS. *See* Pl.'s Compl. at ¶ 67.  However, as discussed above, it is not enough to allege a defendant had access to a trade secret and then to blame the defendant for the loss of business, without also alleging how that information was actually used.  *See, e.g., LigTel Commc'ns, Inc.*, __ F.Supp.3d __, 2020 WL 1934178, at *10; *Indus. Packaging Supplies, Inc.*, 2018 WL 2560993, at *2; *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1066.  Moreover, with the exception of the sole allegation related to Campbell discussed above, HSB's allegations related to misappropriation are deficient because they do not allege unlawful conduct by each defendant.  *See Physician's Surrogacy, Inc. v. German,* No. 17cv718-MMA (WVG), 2018 U.S. Dist. LEXIS 16261, at *28 (S.D. Cal. Jan 31, 2018) ("To state a claim under the DTSA, Plaintiff must more specifically connect allegations of misappropriation to specific Defendants' actions.").  Therefore, this Court should dismiss HSB's trade secret misappropriation claims.

**C.    This Court should dismiss HSB's breach of non-disclosure obligations claim against Jacobs because the Complaint fails to allege any disclosure or use.**

HSB's breach of contract claim against Jacobs for violation of his Proprietary Information and Invention Assignment Agreement ("PIIAA") warrants dismissal for the same reasons as HSB's misappropriation of trade secrets claim.  *See supra* § III.B.  This claim is predicated on Jacobs' disclosure and/or use of HSB's Proprietary Information.  *See* Pl.'s Compl. at ¶ 82.  The Complaint, however, lacks any allegations of actual disclosure or use of HSB's Proprietary Information by Jacobs.  Further, HSB claims to have suffered irreparable harm and damages as a result of Jacobs' purported breach of the PIIAA.  *See id.* at ¶ 84. But, the Complaint fails to allege

any customer or business lost as a result of Jacobs' unspecified disclosure and/or use of HSB's unidentified Proprietary Information.

**D.     This Court should dismiss HSB's tortious interference claims because Defendants' conduct was justified and lawful, HSB's allegations are conclusory, and HSB's claims are preempted.**

Counts three and four of HSB's Complaint purport to allege claims of tortious interference against Defendants for alleged interference with, respectively, "HSB's Workforce" and "HSB's Customers." *See* Pl.'s Compl. at 18, 19.  Under Indiana law, the elements of a claim for tortious interference with a business relationship—be it employees or customers—are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *Smith v. Biomet, Inc.*, 384 F. Supp. 2d 1241, 1249 (N.D. Ind. 2005). Importantly, "[i]n addition to these five elements, a claim of tortious interference with a business relationship requires some independent illegal action." *Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 797 (S.D. Ind. 2011) (internal quotations omitted).

**(i)     Defendants' conduct with respect to HSB's employees and customers was justified.**

The Complaint includes a conclusory assertion that Defendants "unjustifiably" caused employees and customers to leave HSB for OneCIS. *See* Pl.'s Compl. at ¶¶ 96, 102. However, "[i]n order to adequately plead the fourth element—the absence of justification—the plaintiff must state more than a mere assertion that the defendant's conduct was unjustified." *Mourning v. Allison Transmission, Inc.,* 72 N.E.3d 482, 488 (Ind. Ct. App. 2017).  "[T]he plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant conduct was unjustified." *Id*.  In this context, "unjustified" means "malicious and *exclusively* directed to the injury and

damage of another." *Id.*; *see also Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (dismissing subordinate creditors' tortious interference claim where alleged intent to thwart creditors' efforts was not the *exclusive* purpose of altering terms of construction loan agreement).

When the issue of justification concerns competitors in business, Indiana courts look to the Restatement of Torts § 768 for guidance. *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1998). The Restatement provides that "[o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if:

> (a) the relation concerns a matter involved in the competition between the actor and the other and
> (b) the actor does not employ wrongful means and
> (c) his action does not create or continue an unlawful restraint on trade and
> (d) his purpose is at least in part to advance his interest in competing with the other."

Restatement (Second) of Torts § 768 (1979). As explained in the commentary to this Restatement section, "[o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors." *Id.* at Cmt. on (1)b. Such inducement is properly—and justifiably—achieved "by express inducement as well as indirectly by attractive offers of his own goods or services," as opposed to "wrongful means" such as "physical violence, fraud, civil suits and criminal prosecutions." *Id.*; Cmt. on b(e).

Therefore, "actions relating to gaining business . . . taken in the spirit of business competition, constitute justification under Indiana law." *Konecranes, Inc. v. Davis*, No. 1:12-CV-01700-JMS, 2013 WL 1566326, at *3 (S.D. Ind. Apr. 12, 2013) (finding plaintiff "effectively pled itself out of court" because the allegations showed the defendants "were motivated at least in part

by their own legitimate interest in securing new customers" and "did not act exclusively to injure [the plaintiff]"). Further, "a plaintiff must prove the absence of justification by establishing that the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bragg v. City of Muncie*, 930 N.E.2d 1144, 1147–48 (Ind. Ct. App. 2010).

Here, the Complaint states that OneCIS is a competitor and alleges that OneCIS' purpose for hiring HSB's former employees and to work with HSB's former customers is to advance OneCIS' interest in competing with Plaintiff. *See* Pl.'s Compl. at ¶¶ 11, 95, 101. Importantly, HSB does not allege that Defendants utilized wrongful means in the recruitment of its employees or solicitation of its clients, or that OneCIS' actions constitute an unreasonable restraint on trade. *See* Restatement (Second) of Torts § 768. For example, there is no allegation that Defendants used "physical violence, fraud, civil suits and criminal prosecutions" anywhere in the Complaint. Restatement (Second) of Torts § 768 (1979), Cmt. on b(e). Accordingly, OneCIS' choice to hire employees or solicit customers to compete with HSB cannot constitute tortious interference because it has a legitimate business justification. *See, e.g., Smith.,* 384 F. Supp. 2d at 1251 (defendant contacting fired distributor's sales representatives about a potential employment opportunity with its new distributors was a legitimate business justification); *Harvest Life Ins. Co.*, 701 N.E.2d at 877 (finding that the privilege to compete with others, combined with a customer's freedom to choose with whom it does business, provided the requisite justification to defeat plaintiff's tortious interference claim). Therefore, counts four and five of Plaintiff's Complaint should be dismissed in their entirety.

### (ii)   HSB fails to allege an independent illegal action.

HSB's tortious interference claims also fail because the Complaint does not allege an independent illegal action supporting HSB's claim of tortious interference with HSB's workforce.

*See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 278 (7th Cir. 2016) (finding that Indiana courts have reaffirmed that "illegal conduct is an essential element in a claim for tortious interference with a business relationship"). For this reason alone, counts four and five of Plaintiff's Complaint are deficient and should be dismissed.

Further, none of the allegations contained elsewhere in the Complaint meet this requirement. First, courts applying Indiana law have made clear that a breach of contract does not satisfy the "illegal action requirement." *Nikish Software Corp.,* 801 F. Supp. 2d at 797. Therefore, any alleged breach of the Restrictive Covenant Agreements cannot meet the requirement for an "illegal" action to support HSB's tortious interference claims. Second, HSB specifically states that Defendants' "tortious interference with HSB's employee relationships was separate and apart from, and unrelated to, its misappropriation of HSB's trade secrets." *See* Pl.'s Compl. at ¶ 97. Therefore, any alleged misappropriation of trade secrets cannot supply the requirement for an "illegal" action with respect to this tortious interference claim.

**(iii)   IUTSA preempts HSB's tortious interference with customers claim.**

In count five of the Complaint, HSB specifically asserts that "Defendants used HSB's trade secrets and other confidential information, which the Defendants misappropriated" in tortiously interfering with HSB's customer relationships. Pl.'s Compl. at ¶ 103. Because HSB bases this cause of action on the alleged misappropriation of its trade secrets, the count is preempted by the IUTSA and should be dismissed. *See Patriot Homes, Inc. v. Forest River Hous., Inc.,* 489 F. Supp. 2d 865, 873 (N.D. Ind. 2007) ("[T]his Court finds that some of Patriot's tortious interference claims depend solely upon Sterling's misappropriation of trade secrets, and therefore, to this extent the claims are preempted.").

**(iv)    There are insufficient allegations to support a claim for tortious interference with HSB's workforce or customers against the Individual Defendants.**

HSB alleges tortious interference with HSB's workforce against both OneCIS and the Individual Defendants. *See* Pl.'s Compl. at 18-19. However, there is nothing in the Complaint suggesting that the Individual Defendants were involved in the recruiting of other employees on behalf of OneCIS. Further, to the extent that HSB is claiming that the Individual Defendants interfered with their own employment contracts, those claims fail as a matter of law. *See, e.g., Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006) ("A party cannot "interfere" with its own contracts, so the tort itself can be committed only by a third party") (citation omitted). Accordingly, this Court should dismiss count four as to the Individual Defendants.

Similarly, HSB alleges tortious interference with HSB's customers against both OneCIS and the Individual Defendants. However, HSB's 23-page Complaint only alleges one specific client as having been allegedly "stolen" by OneCIS—Duke Energy—and that was apparently alleged to have happened in 2018, well before the Individual Defendants were employed by OneCIS. *See* Pl.'s Compl. at ¶ 67. There is simply no allegation that the Individual Defendants were involved in soliciting Duke Energy or any other specific client. The only other allegation regarding the Individual Defendants' supposed culpability is "upon information and belief that the Individual Defendants are continuing to improperly solicit HSB's customers." *Id*. at ¶ 62. "Pleading facts alleged upon information and belief is permissible where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Here, whether or not HSB's own customer relations have

been interfered with is within HSB's knowledge. Yet, there are no factual allegations evidencing the Individual Defendants' participation in improper customer solicitation. Thus, HSB's conclusory allegations against the Individual Defendants are insufficient to state a plausible claim. *Id*. For these reasons, this Court should dismiss count five of the Complaint as to the Individual Defendants.

**E.    This Court should dismiss HSB's "employee piracy" claim because it is not an independent cause of action and HSB's unfair competition claim because the IUTSA preempts that claim.**

HSB's claim of "employee piracy and unfair competition" against OneCIS is a Frankstein-ed version of its tortious interference claim—combining an unrecognized and a preempted cause of action under eerily similar allegations to those asserted in HSB's fourth cause of action. However, HSB cannot give life to either theory.  *See* Pl.'s Compl. at 17-18.  Accordingly, this Court should dismiss count three of the Complaint.

**(i)    "Employee Piracy" is not a recognized, independent cause of action.**

The first claim contained within count three of the Complaint is for "employee piracy." Defendants are unable to find any Indiana law establishing, discussing, or even referencing such a cause of action.  Accordingly, this Court should dismiss that cause of action.

To the extent this Court looks to other jurisdictions to determine whether HSB has stated a valid claim, Defendants note that courts have consistently held that employee piracy is not a recognized cause of action, while others find that it has been subsumed by claims of tortious interference. *See, e.g., EndoSurg Med., Inc. v. EndoMaster Med., Inc.,* 71 F. Supp. 3d 525, 557 (D. Md. 2014) (finding "employee piracy and corporate raiding" is not a cause of action in Maryland); *see also loanDepot.com v. CrossCountry Mortg., Inc.,* 399 F. Supp. 3d 226, 237 (D.N.J. 2019) ("A claim of employee piracy is in substance, if not in name, a claim for tortious interference with employment contracts or a claim of tortious interference with economic advantage."); *Dah Chong*

19

*Hong, Ltd. v. Silk Greenhouse, Inc.,* 719 F. Supp. 1072, 1075 (M.D. Fla. 1989) ("Count VI asserts a claim for tortious interference with contractual relations, including employee piracy.").

For its part, the Seventh Circuit has held that "employee piracy" is nothing but a claim for tortious interference.  *See Indep. Tube Corp. v. Copperweld Corp.*, 691 F.2d 310, 326 (7th Cir. 1982), rev'd, 467 U.S. 752 (1984); *N. L. R. B. v. Rohlen*, 385 F.2d 52, 55 n.2 (7th Cir. 1967).  For example, the Seventh Circuit in *Independence Tube Corporation*—relying on Illinois law— expressly held that the claimants' theory of employee piracy does not state a claim unless the elements of a tortious interference cause of action are shown.  *See Indep. Tube Corp.,* 691 F.2d at 326 (the elements include: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on part of the interferer; (3) an intentional and malicious interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted.").

In summary, "employee piracy" is not a recognized cause of action under Indiana law and should be dismissed on that basis.  At most, it is a mere rephrasing of another cause of action HSB asserts elsewhere (*i.e.*, tortious interference) that should be dismissed so as to prevent HSB from having, in effect, two bites at the same apple.[6]

**(ii)    HSB's unfair competition claim is preempted.**

The second cause of action included in count three of the Complaint is "unfair competition." Similarly, unfair competition has become a generic term that encompasses—among other claims—tortious interference.  *See Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 503, 656 A.2d 1009, 1022 n.23 (1995) ("Unfair competition is now a generic name for a number of

---

[6] Further, as explained in this Motion, HSB's tortious interference claims likewise fail.

related torts involving improper interference with business prospects.") (quoting W. Prosser & W. Keeton, Torts (5th Ed.1984) § 130, p. 1013); *see also Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 598 (Ind. 2001) (noting that unfair competition is considered "a subspecies of the class of torts known as tortious interference with business or contractual relations").

The IUTSA additionally preempts claims of unfair competition premised on the alleged misappropriation of trade secrets. *See Konecranes, Inc.*, 2013 WL 1566326, at *4 (citing *HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924 (Ind. Ct. App. 2012)). The IUTSA provides that it "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." IND. CODE § 24-2-3-1(c). Here, the crux of Plaintiff's unfair competition claim is that OneCIS allegedly hired employees in an effort to "steal confidential HSB trade secret information . . . rather than fairly competing." *See* Pl.'s Compl. at ¶ 89. Accordingly, HSB's claim against OneCIS is premised solely on the misappropriation of trade secrets and is thus preempted. *See Inst. for Int'l Educ. of Students v. Qian Chen*, 380 F. Supp. 3d 801, 809 (S.D. Ind. 2019) ("[T]he IUTSA would preempt the sort of unfair competition claim . . . premised solely on misappropriation of trade secrets, as a "free-standing alternative cause of action."). Notably, while "the plaintiff does not need to prove the legal claims at the pleadings stage . . . if any common law claim is preempted by the IUTSA . . . then it cannot go forward, ever." *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 869 (N.D. Ind. 2007) (declining to deny defendants' preemption arguments as premature). Accordingly, HSB fails to state a claim for unfair competition that is not preempted by the IUTSA.

Further, while Indiana "continues to recognize a cause of action for unfair competition, defined as the attempt to create confusion concerning the source of the unfair competitor's goods," Plaintiff's complaint does not allege the facts necessary to state such a claim. *Cf. Inst. for Int'l*

*Educ. of Students*, 380 F. Supp. 3d at 810. The question to be determined in every unfair competition case is "whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business." *Id*. Disregarding any preempted misappropriation allegations, HSB simply asserts that OneCIS hired Plaintiff's former employees and subsequently gained at least one customer—Duke Energy. *See* Pl.'s Compl. at ¶¶ 67, 89. There are no facts to allege that OneCIS "passed off" any aspect of HSB's business as its own, and thus, HSB fails to adequately allege the requisite facts to maintain an unfair competition claim. Indeed, there is simply no allegation that Defendants are seeking to pass off their goods and services as those of HSB or otherwise to create confusion regarding the source of any good or service.

**F.      HSB's conversion claim should be dismissed because it is preempted by the IUTSA.**

Count seven of the Complaint purports to allege a claim for conversion against each of the Defendants. With respect to this claim, however, the IUTSA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." *HDNet LLC*, 972 N.E.2d at 926 (quoting IND. CODE ANN. § 24-2-3-1). HSB's conversion claim is based on the alleged retention of the "trade secrets and confidential, proprietary and/or non-public information related to HSB's business, customers, services, and pricing strategies." *See* Pl.'s Compl. at ¶ 114. Notably, in its misappropriation claim, HSB similarly defines the "confidential, proprietary, and trade secret information including, but not limited to, information related to HSB's customers, prospects, pricing, profit percentages, preferences and markets" as "Trade Secrets." *Id*. at ¶ 69.

Defendants acknowledge that, under some circumstances, a claim for conversion may not be preempted under the IUTSA. *See Patriot Homes, Inc.*, 489 F. Supp. 2d at 871 ("This Court's determination that the claims for theft/conversion of the tangible medium embodying the

intellectual property are not preempted is in line with Indiana law."); *but see Remy, Inc. v. Tecnomatic S.P.A.*, No. 1:11-CV-00991-SEB, 2014 WL 2882855, at *11 (S.D. Ind. June 24, 2014) (finding conversion claim preempted by the IUTSA where the tangible property taken had little or no value apart from the intangible, trade secret information contained therein).  In this case, however, HSB's pleadings inarguably center its conversion claim on Defendants' alleged possession of HSB's "Trade Secrets," and thus, the cause of action falls squarely within the preemption provision of the IUTSA.  *See, e.g., Honda Mfg. of Ind. LLC v. Custom Machs., Inc., et al.*, No. 115CV00042TWPMPB, 2017 WL 4956427, at *8 (S.D. Ind. Nov. 1, 2017); *Firth v. Yahoo! Inc.*, No. 3:10CV75-PPS/CAN, 2010 WL 2696286, at *3 (N.D. Ind. July 2, 2010).  Accordingly, HSB fails to state an actionable claim for conversion under Indiana law and that claim should be dismissed.

### G. HSB's breach of fiduciary duty claim should be dismissed because it is preempted and not adequately alleged.

HSB's sixth cause of action asserts breach of fiduciary duty against the Individual Defendants.  In Indiana, "an employee who plans to leave his current job and go into competition with his current employer must walk a fine line." *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind. Ct. App. 2007).  An employee may, however, make arrangements to compete. *Potts v. Review Bd. of Ind. Emp't Sec. Div.*, 475 N.E.2d 708, 712 (Ind. Ct. App. 1985); *see also Kopka, Landau & Pinkus*, 874 N.E.2d at 1070 (while defendant was "certainly preparing to compete" by questioning plaintiff's employees about their desire to work for his future employer, this action did not constitute a breach of fiduciary duty).  Accordingly, courts attempt to balance "the concern for the integrity of the employment relationship against the privilege of employees to prepare to compete against their employers without fear of breaching their fiduciary duty of loyalty." *Potts*, 475 N.E.2d at 712.

Defendants acknowledge that "an employee cannot properly use confidential information peculiar to his employer's business before he leaves his employ." *Id*.; *see also N. Elec. Co. v. Torma*, 819 N.E.2d 417, 430 (Ind. Ct. App. 2004) (taking an employer's trade secrets, refusing to return it at the end of his employment, and subsequently using it to compete with the company is a violation of the employee's duty). However, this does not save HSB's breach of fiduciary duty claim. HSB's states that its breach of fiduciary duty claim is "separate and apart from, and unrelated to, [Defendants'] misappropriation of HSB's trade secrets." *See* Pl.'s Compl. at ¶ 111. HSB attempts to parse out "confidential information and proprietary information," despite previously using this very language to define "Trade Secrets." *Id*. at ¶¶ 69, 109. HSB's efforts to have its cake and eat it too fail. To the extent HSB's "confidential and proprietary information" survives HSB's express disclaimer that the fiduciary duty claim involves trade secrets, HSB's claim is nonetheless preempted by the IUTSA. *See HDNet LLC*, 972 N.E.2d at 924 (Ind. Ct. App. 2012) (adopting interpretation of preemption provision that "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status").

The remainder of HSB's claim relies on conclusory allegations that the Individual Defendants: solicited HSB employees to work for OneCIS and/or failed to inform HSB of OneCIS' solicitations and scheme to raid HSB's employees.[7] *See* Pl.'s Compl. at ¶ 108. Again, HSB neglected to allege that the Individual Defendants were involved in the solicitation of HSB employees or—apart from their own offers of employment—aware of OneCIS' alleged scheme.

---

[7] The Complaint additionally alleges that "[t]he Individual Defendants also disclosed to OneCIS, while in HSB's employ, confidential and proprietary information respecting HSB and its customers." Pl.'s Compl. at ¶ 109. The Complaint, however, fails to describe with any particularity the alleged disclosure by the Individual Defendants or what was purportedly disclosed. *See McCauley*, 671 F.3d at 616; *see also Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions, and unsupported conclusory statements.").

*Id.* at ¶¶ 52-63.  Nonetheless, such actions do not evidence "direct and active" competing on the part of the Individual Defendants, but instead describe permissible preparation to compete and/or the avoidance of a potential conflict of interest. Accordingly, HSB fails to state a claim for relief for breach of fiduciary duty against the Individual Defendants.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court dismiss Plaintiff's first, second, third, fourth, fifth, sixth, and seventh causes of action in the Complaint against Defendants.  Defendants also request all other relief to which they may be entitled.