UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:20-cv-00117-SEB-DML |
| MICHAEL CAMPBELL, KIAH JACOBS, ONECIS INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER OVERRULING OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDERS

This matter comes before the Court on Defendants' Objections, [Dkt. 42, 43], to the Magistrate Judge's October 1, 2020 Orders granting Plaintiff's Motion to Disqualify Defendants' Counsel, [Dkt. 39], and denying Defendants' Motion to Disqualify Plaintiff's Counsel, [Dkt. 40]. For the reasons detailed below, Defendants' Objections are **overruled.**[1]

---

[1] Also pending before the Court are Defendants' Motions for Leave to File Reply, [Dkt. 46, 47], in which Defendants assert that "they should be allowed to file [replies]," even though the Federal Rules of Civil Procedure do not expressly address whether a party objecting to a Magistrate Judge's orders is so entitled. Plaintiff does not oppose these requests; however, it has filed two Motions for Leave to File Surreply, [Dkt. 48, 49], claiming that Defendants' proposed reply briefs cite new evidence and craft new arguments. Plaintiff's requests are also without opposition. Because neither side opposes the other's requests, Defendants' Motions for Leave to File Reply and Plaintiff's Motions for Leave to File Surreply are **granted.** The proposed briefs are deemed filed on the dates they were submitted.

1

## Background

### I. Hartford Insurance's Motion for Disqualification

Plaintiff The Hartford Steam Boiler Inspection and Insurance Company ("Hartford Insurance") initiated this lawsuit against Michael Campbell, Kiah Jacobs, and OneCIS Insurance Company (collectively, "Defendants") on June 1, 2020, alleging that Defendants had committed various wrongs, including breach of contract and the misappropriation of trade secrets. Shortly after the complaint was filed, attorneys from the law firm of McGuire Woods LLP ("McGuire Woods") appeared on behalf of Defendants, despite the fact that this firm currently serves as outside counsel for Hartford Insurance. Indeed, McGuire Woods has served as outside counsel for Hartford Insurance for approximately ten years, providing to it legal advice and counsel on various labor and employment matters.

Hartford Insurance promptly sought to disqualify McGuire Woods, arguing before the Magistrate Judge that a conflict of interest precluded McGuire Woods from representing Defendants in this litigation. Moreover, said Hartford Insurance, it had previously informed McGuire Woods that it was unwilling to waive this conflict. Specifically, on June 4, 2020, three days after Hartford Insurance filed its complaint, William Doyle, a partner with McGuire Woods, emailed Hartford Insurance's Deputy General Counsel Jean Cohn "with a request for a conflict waiver" so that McGuire Woods could represent Defendants in this matter. [Dkt. 20-1, Exh. A]. Acknowledging that such representation would create a conflict of interest, Mr. Doyle wrote: "Because that representation would be adverse to [Hartford Insurance], we could not undertake it unless

2

[Hartford Insurance] and [Defendant] OneCIS consent." [*Id.*]. Mr. Doyle thanked Hartford Insurance for considering the "waiver request." [*Id.*]

One hour later, however, Mr. Doyle emailed again to explain that it was actually McGuire Woods's belief that the pending litigation was "unrelated" to the work that McGuire Woods performed on behalf of Hartford Insurance. Accordingly, Mr. Doyle informed Hartford Insurance that it would rely upon "an agreement for prospective consent" contained in a retainer agreement entered into between Hartford Insurance and McGuire Woods, which agreement Mr. Doyle apparently had not reviewed prior to his first email communication. [*Id*].

The next morning, on June 5, 2020, Ms. Cohn responded to Mr. Doyle's message, notifying him that Hartford Insurance did not consent to waive the conflict on the grounds that it believed this matter is, in fact, "closely related" to the legal work performed by McGuire Woods for Hartford Insurance. [*Id.*] McGuire Woods did not respond. Instead, three of its attorneys entered appearances in this matter and, three weeks later, on June 26, 2020, submitted a motion to dismiss Hartford Insurance's Complaint, alongside attorneys from the firm of Applegate Fifer Pulliam LLC.

Following McGuire Woods's unresponsiveness, Hartford Insurance filed a motion for disqualification on July 24, 2020. Invoking Indiana Rule of Professional Conduct 1.7,[2] Hartford Insurance asserted in this motion, which was referred to the Magistrate Judge for

---

[2] Our Local Rule 83.5(e) provides that "[t]he Indiana Rules of Professional Conduct . . . govern the conduct of those practicing in the court."

ruling, that McGuire Woods's concurrent conflict of interest precluded its representation of Defendants in the pending litigation before our court.

Pursuant to Rule 1.7, a lawyer is prohibited from representing a client "if the representation involves a concurrent conflict of interest." A concurrent conflict exists when, as here, the representation of a client would be "directly adverse to another client." IND. R. PROF. CONDUCT 1.7(a)(1). A lawyer may represent a client notwithstanding the existence of a concurrent client *only* if the following criteria are satisfied:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

IND. R. PROF. CONDUCT 1.7(b). Because it did not consent to the representation, Hartford Insurance sought the disqualification of McGuire Woods, regardless of whether this litigation is unrelated to other cases in which McGuire Woods provides legal services to Hartford Insurance.

Defendants maintain that an "Engagement Agreement" entered into between McGuire Woods and Hartford Insurance includes a "prospective consent provision," permitting McGuire Woods to represent Hartford Insurance's direct adversaries in future litigation so long as the litigation was unrelated to any legal work that McGuire Woods undertakes for Hartford Insurance. Specifically, this agreement provides:

4

> McGuire Woods is a large multi-national law firm. Given the size of our firm and client base, it is possible that in the future we may be asked to represent other clients (meaning both existing clients and future clients) that may be direct competitors of yours or otherwise may have business interests that are contrary to your interests. Such other clients may seek to engage McGuire Woods in connection with an actual or potential transaction or pending or potential litigation in which client's interests are or potentially may become adverse to your interests or the interests of your subsidiaries and affiliates.
>
> Therefore, as a condition of our representation of you, you consent in advance to our representation of other clients with respect to any such matter described above, provided that the matter is unrelated to matters where we represent you.

[Dkt. 25-1, Exh. A].

According to Defendants, this prospective consent provision satisfies the informed consent requirement delineated in Rule 1.7(b), given that this rule permits clients, in certain circumstances, to waive future conflicts of interests. *See* IND. R. PROF. CONDUCT 1.7, cmt. 22. Defendants further argued to the Magistrate Judge that even if she concluded that informed consent had not been given, she should not impose the "drastic remedy" of disqualification without weighing the lack of informed consent along with other factors—such as the relatedness of the issues and counsel's capacity to protect against the disclosure of confidential information—before determining whether disqualification was appropriate.

In quick rejoinder, Hartford Insurance informed the Magistrate Judge that Defendants unfairly "cherry picked" portions of the Engagement Agreement's prospective consent provision by omitting any reference to following, final paragraph of this provision:

> McGuire Woods asks you to consent in advance to McGuire Woods accepting future matters for your adversaries where the matters are unrelated to the work we do for you ***and do not involve you as a party.***

5

[Dkt. 25-1, Exh A, *emphasis added*].

Thus, Hartford Insurance argued that it did not prospectively agree to waive the conflict in instances where, as here, McGuire Woods represents a party directly adverse to Hartford Insurance. Additionally, those cases cited by Defendants that involved courts weighing informed consent as merely one factor in the determination of disqualification did not involve instances of counsel attempting to represent the direct adversary of one its current clients.

Following a careful review of the parties' respective positions, the Magistrate Judge granted Hartford Insurance's Motion to Disqualify. Rejecting McGuire Woods's contention that it could represent Hartford Insurance's direct adversary so long as the matters for which it represents Hartford Insurance are unrelated to those presented in this case, as well as declining the invitation to treat informed consent as one factor in her analysis rather than an element of it, the Magistrate Judge concluded: "[I]t makes no difference whether there is any relationship between the claims in this case and the firm's representation of Hartford Insurance. A law firm cannot appear for one client in litigation adverse to another client without the client's consent. Period. *See* Ind. R. Prof. Conduct 1.7." [Dkt. 39].

The Magistrate Judge's conclusion relies on the plain language contained within the Engagement Agreement. She ruled that the prospective waiver provision contained therein is applicable only "when Hartford Insurance is *not* a party." [Dkt 39, at 2, (*emphasis in original*)]. The Magistrate Judge also denied Defendants' request that the Court overlook the conflict because Hartford Insurance, as argued by Defendants in their pending motion to dismiss, is not the proper party to this litigation. The Magistrate Judge explained:

6

"Hartford Insurance *is* the plaintiff and McGuire Woods cannot litigate against its own client, even if there were a motion challenging Hartford Insurance's standing." [*Id.* (*emphasis in original*)].

On this basis, the Magistrate Judge granted Hartford Insurance's Motion to Disqualify McGuire Woods as counsel for Defendants.

### II. Defendant OneCIS Insurance Company's Motion to Disqualify Greenberg Traurig as Hartford Insurance's Counsel

If Hartford Insurance's Motion to Disqualify were to be granted, Defendant OneCIS Insurance Company ("OneCIS") contends that the Court should also disqualify attorneys from the law firm of Greenberg Traurig from representing Hartford Insurance for the same reason, that is, a concurrent conflict that precludes Greenberg Traurig's representation of Hartford Insurance in this litigation. Having granted Hartford Insurance's motion for disqualification, the Magistrate Judge addressed OneCIS's cross-motion.

OneCIS belongs to the Bureau Veritas family of companies, of which Bureau Veritas S.A. serves as the ultimate parent company within this corporate structure. As OneCIS explained to the Magistrate Judge, Greenberg Traurig has served as outside counsel to Bureau Veritas's corporate family on various matters related to export control and international sanctions. Specifically, Kara Bombach, a shareholder in Greenberg Traurig's Washington, D.C. office, has served as outside counsel to Bureau Veritas for "several years," billing her services to Bureau Veritas S.A. On this basis of this legal relationship, OneCIS asserted that "Bureau Veritas, therefore, considers itself a current client of [Greenberg Traurig] based on its continuous, ongoing relationship with the

7

firm[.]" [Dkt. 24-1, at 8]. Because Greenberg Traurig currently serves as counsel to OneCIS's parent company, OneCIS maintains that Rule 1.7 mandates that Greenberg Traurig must be disqualified from representing Plaintiff in this matter.

In response, Hartford Insurance adamantly denied that Greenberg Traurig has *ever* represented OneCIS, noting that Defendant's cross-motion contains no allegations that Greenberg Traurig ever actually rendered services specifically to OneCIS. Rather, Greenberg Traurig's relationship runs solely to OneCIS's parent company. Invoking comment 34 to Rule 1.7, Hartford Insurance insisted that a firm's representation of one corporation within a corporate family generally does not give rise to an assumption of an attorney-client relationship between the firm and affiliates or subsidiaries of the corporation.

OneCIS argued, for the first time, in its Reply brief that Greenberg Traurig did, in fact, at one time in the past, provide advice and representation to OneCIS, though not "with respect to OneCIS *specifically* in several years[s]." [Dkt. 38, at 3 (*emphasis in original*)]. OneCIS asserted that Greenberg Traurig provided legal services to OneCIS's immediate parent company, Bureau Veritas Holdings Inc., as well its ultimate parent company, Bureau Veritas S.A., and thus the Bureau Veritas corporate family considers Greenberg Traurig "its current legal counsel for export control counseling as it relates to all Bureau Veritas entities—including OneCIS[.]" [*Id.*]

The Magistrate Judge agreed with Hartford Insurance that Rule 1.7 does not require disqualification under these circumstances. As clarified in comment 34 to this rule, absent certain circumstances not applicable here, "a lawyer who represents a corporation or other

8

organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary," and "is not barred from accepting representation adverse to an affiliate in an unrelated matter." OneCIS conceded to the Magistrate Judge that this case at bar does not relate to any work that Greenberg Traurig performs for members of the Bureau Veritas corporate family. Finding that there was no evidence that Greenberg Traurig ever represented OneCIS, nor was there any indication that confidential information acquired by Greenberg Traurig in the course of representing other Bureau Veritas entities would be compromised in this ligation, the Magistrate Judge denied OneCIS's Motion to Disqualify. [Dkt. 40].

On October 15, 2020, Defendants filed their objections to the Magistrate Judge's Orders, which are now ripe for our review.

## Analysis

### I.   Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that the district court "must consider timely objections and modify or set aside any part of the [Magistrate Judge's] order that is clearly erroneous or is contrary to law." A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Brown v. Plata*, 563 U.S. 493, 513 (2011). This is an "extremely deferential standard." *Elder Care Providers of Indiana, Inc. v. Home Instead, Inc.*, No. 1:14-CV-01894-SEB-MJD, 2017 WL 4250107, at *2 (S.D. Ind. Sept. 26, 2017); *see also Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006).

## I. Defendants' Objections to the Magistrate Judge's Order Granting Disqualification of McGuire Woods

Defendants have lodged several attacks on the Magistrate Judge's Order disqualifying McGuire Woods, each of which we review in turn below.

### A. *The Magistrate Judge Did Not Misapply Rule 1.7, Nor Did She Err in Her Interpretation of the Engagement Agreement*

Defendants argue in their objection that the Magistrate Judge's application of Rule 1.7 was contrary to law, particularly in light of the Engagement Agreement entered into between Hartford Insurance and McGuire Woods. Citing comment 18 to Rule 1.7, Defendants assert that "[i]nformed consent requires that each affected client be aware of the relevant circumstances and reasonably foreseeable ways that the conflict could have adverse effects on the interests of the client." With specific respect to retainer agreements providing for the waiver of future conflicts, "the effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks the waiver entails." IND. R. PROF. CONDUCT 1.7, cmt. 22. When, as was the case here, clients are represented by sophisticated legal counsel when they consent to future waiver provisions, such provisions are more likely to be upheld when they are challenged. According to Defendants, the Magistrate Judge committed clear error when she failed to "assess the foreseeability of the conflict at hand," in light of the relevant waiver language.

This waiver language thus forms the crux of Defendants' objection, and Defendants insist that the Magistrate Judge "clearly erred by failing to harmonize" the provisions of the waiver as a whole, which together state as follows:

10

>McGuire Woods is a large multi-national law firm. Given the size of our firm and client base, it is possible that in the future we may be asked to represent other clients (meaning both existing clients and future clients) that may be direct competitors of your or otherwise may have business interests that are contrary to your interests. Such other clients may seek to engage McGuire Woods in connection with an actual or potential transaction or pending or potential litigation in which client's interests are or potentially may become adverse to your interests or the interests of your subsidiaries and affiliates.
>
>Therefore, as a condition of our representation of you, you consent in advance to our representation of other clients with respect to any such matter described above, provided that the matter is unrelated to matters where we represent you. You may retain separate counsel to review the terms of this prospective consent, and of course you are free to retain other counsel for this matter.
>
>McGuire Woods asks you to consent in advance to McGuire Woods accepting future matters for your adversaries where the matters are unrelated to the work we do for you and do not involve you as a party.

Defendants posit that, when read together, "it is clear that [Hartford Insurance] consented to [McGuire Woods's] representation of other clients in cases where the work is unrelated to that for which [McGuire Woods] is engaged to represent [Hartford Insurance], *even if [Hartford Insurance] is a party to such litigation.*" [Dkt. 42, at 9 (*emphasis in original*)]. Defendants insist that the waiver provision, read in full, "clearly inten[ded]" for Hartford Insurance to waive future conflicts such as this one, and, based on this apparently obvious intention, Hartford Insurance was reasonably informed that it was consenting to such a waiver. [*Id.* at 9]. Accordingly, argue Defendants, the "Magistrate Judge's selective interpretation" of the Employment Agreement is clearly contrary to law. [*Id.* at 10].

McGuire Woods's interpretation of the contract is plainly wrong and legally untenable. While the first two paragraphs of the waiver provision indicate that the firm

11

may represent interests that are adverse to Hartford Insurance if the matters are unrelated, it in no way implies that McGuire Woods may represent a client that is *directly adverse* to Hartford Insurance in a case in which Hartford Insurance is a party. The Magistrate Judge correctly concluded that the final paragraph of this provision *unequivocally* limits its overall scope. McGuire Woods expressly agreed that it would not rely on the waiver to represent a client litigating directly against Hartford Insurance. McGuire Woods's contention that the final paragraph of this waiver merely "reiterates the scope of the advance waiver by specifying that [McGuire Woods] cannot be adverse to [Hartford Insurance] if both the following conditions are met: (1) the matters are related; *and* (2) [Hartford Insurance is an adverse party" is incorrect. [Dkt. 42, at 9]. To interpret the contract in this manner requires the insertion of terms that not only are not there, but would be glaringly inconsistent with those that are. The Magistrate Judge's interpretation of the waiver, with which we are in complete agreement, allows McGuire Woods to serve as counsel on certain unrelated matters where a conflict my arise—for example, if McGuire Woods is sought out by a competitor of Hartford Insurance or by an entity with opposing business interests to Hartford Insurance's—but excludes from the reach of the waiver any matters in which Hartford Insurance is or would be an opposing party.

Defendants' objection is therefore **overruled**. The Magistrate Judge's interpretations of Rule 1.7 and the Engagement Agreement were not clearly erroneous; indeed, they were entirely sound, and we endorse them unequivocally

   B. *The Magistrate Judge's Decision Not to Apply the "Substantial Relationship Test" Was Not Clearly Erroneous Nor Contrary to Law*

Defendants next assert that even if the Magistrate Judge is determined to be correct in her conclusion that Hartford Insurance did not consent to McGuire Woods's representation of Defendants, she nonetheless erred in treating Hartford Insurance's lack of consent as dispositive of the disqualification question before the Court. Defendants argue that she should have instead applied the "substantial relationship test," originally articulated by the Seventh Circuit in the context of judging potential conflicts between current and former clients. *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983). The *LaSalle* Court provided the following framework for analyzing such disputes:

> First, the trial judge must make a factual reconstruction of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against a former client.

*Id.* In previously applying this test, our court in *Gen-Cor, LLC v. Buckeye Corrugated, Inc*. cautioned that "a finding of conflict is not automatically grounds for dismissal."111 F. Supp. 2d 1049, 1055, 2000 WL 1230415 (S.D. Ind. 2000). Defendants cite *Gen-Cor* to argue that the Magistrate Judge erred in determining that disqualification was required without applying the substantial relationship test.

Defendants overlook the fact that *Gen-Cor* did *not* involve an attorney or firm representing a litigant who was directly adverse to a current client. Instead, the law firm whose representation was the target of the disqualification motion was representing a party litigating against a corporation whose parent company was one of the firm's clients.

13

Though the Court in *Gen-Cor* found that a conflict existed,[3] it ruled that disqualification was not warranted based on the substantial relationship test. That situation is unlike the one currently before us. The *Gen-Cor* Court did not address the situation of a law firm that was litigating directly against its current client, only against a corporate family member of the client. The decision in *Gen-Cor* simply did not encompass a broad rule.

The other cases cited by Defendants are similarly unhelpful here. *McClain v. T P Orthodontics*, 2008 WL 181292, at *3 (N.D. Ind. Jan. 17, 2008) (concluding that no attorney-client relationship existed that warranted disqualification); *Installation Software Techs., Inc. v. Wise Sols., Inc.*, 2004 WL 524829, at *7 (N.D. Ill. Mar. 5, 2004) (finding that disqualification of law firm representing plaintiff was not warranted where defendant was a subsidiary of a client belonging to the firm); *SWS Fin. Fund A v. Salomon Bros. Inc.*, 790 F. Supp. 1392, 1402 (N.D. Ill. 1992) ("When disqualification is based on the adverse representation of a current client, rather than a former client, the court must look beyond the issue of 'substantial relatedness[.]'") Having thus directed us to *no* cases where the Court denied disqualification based on facts similar to those presented here, Defendants have fallen well short of creating a firm conviction in us that a mistake was made when the Magistrate Judge refrained from applying this test. This objection is also **overruled.**

  C. *The Magistrate Judge Did Not Commit Clear Error in Dismissing Defendants' Standing Argument*

---

[3] We note that *Gen-Cor* was decided prior to the publishing of comment 34 to Rule 1.7, which, as stated previously, provides that "[a] lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary."

Finally, Defendants argue that the Magistrate Judge committed clear error when she refused to consider their position that Hartford Insurance is not the proper plaintiff in this lawsuit and thus lacks standing to bring these claims, which is the issue raised in a pending motion to dismiss. Defendants argue that if the purported proper plaintiff were substituted for Hartford Insurance, then any conflict issue with Hartford Insurance would be resolved.

The Magistrate Judge's rejection of this argument was firmly grounded in the obvious: at this stage in the litigation, Hartford Insurance *is* the plaintiff to this lawsuit, and the Court cannot permit McGuire Woods to litigate that issue and thus proceed against its own client. Hartford Insurance's standing is beside the point in determining this conflict of interest issue. Arguing that the Magistrate Judge's decision in this regard was "contrary to law," Defendants nonetheless cite *no* cases supporting that position. Whatever authority Defendants believe the Magistrate Judge was in derogation of in rendering this decision has not been explained. The Magistrate Judge's conclusion that McGuire Woods cannot litigate against its own client, which it plainly seeks to do, clearly aligns with the prohibitions set out in the rules of professional conduct.[4]

Accordingly, we **overrule** this objection to the Magistrate Judge's Order.

---

[4] Defendants also forecast that allowing the Magistrate Judge's Order to stand will encourage widespread gamesmanship whereby plaintiffs intentionally will enlist improper parties to join lawsuits in which they do not belong in order to disqualify their opponent's chosen counsel because of an attorney-client relationship between the improper party and counsel. This "concern" dies of its own weight and, in any event, we see no indication of such gamesmanship here.

## II. Defendants' Objections to the Magistrate's Order Denying OneCIS's Motion for Disqualification

Having upheld the Magistrate Judge's decision to disqualify McGuire Woods as defense counsel, we turn next to review Defendants' objections to her Order denying OneCIS's request to disqualify Greenberg Traurig from representing Hartford Insurance in this litigation.

### A. *The Magistrate Judge's Finding that OneCIS Is Not Greenberg Traurig's Client is Not Clearly Erroneous; Indeed, It Is Correct*

Defendants first argue that the Magistrate Judge erroneously ignored evidence establishing that OneCIS is in fact a client of Greenberg Traurig. Specifically, Defendants assert that ample evidence supports a finding of this attorney-client relationship based on the sworn affidavit by the general counsel of Bureau Veritas's North America Operating Group stating that Bureau Veritas regards Greenberg Traurig as its legal counsel for export control matters for the entire Bureau Veritas corporate family. Defendants proffered a 2012 invoice, issued to Bureau Veritas, as well, reflecting three billing entries related to "J. Mondello," purportedly the then-President of OneCIS, for legal services consisting of "confer[ring] via telephone and email," "draft[ing] email memorandum," and "correspond[ing] via email . . . regarding final analysis." [Dkt. 38-1, Exh. 1]. Defendants argue that this evidence suffices to establish that the Greenberg Traurig law firm represents and advises OneCIS.

Hartford Insurance challenges the accuracy of Defendants' claim that they have presented "overwhelming, uncontroverted evidence" of an attorney-client relationship, arguing further that the Magistrate Judge's conclusion was not erroneous in determining

that OneCIS is not Greenberg Traurig's client. We agree with Hartford Insurance's position, and the Magistrate Judge's as well.

First, the single invoice for 5.5 hours of services performed nearly ten years ago falls shorts of creating a firm conviction that the Magistrate Judge's conclusion that no attorney-client relationship *currently* exists between OneCIS and Greenberg Traurig was an error. In addition to the age of this invoice, it does not establish that services were provided or billed to OneCIS.

The only other evidence proffered by OneCIS is the affidavit of Bureau Veritas's general counsel,[5] who has testified that she believes that Greenberg Traurig serves as legal counsel for all of the Bureau Veritas companies with respect to export control matters. Though a party's subjective belief that it is retaining an attorney is one factor in determining whether an attorney-client relationship exists, such a belief by itself cannot unilaterally create or establish such a relationship. *Matter of Anonymous*, 655 N.E.2d 67, 70 (Ind. 1995); *see also Rosenbaum v. White*, 692 F.3d 593, 601, 2012 WL 3517590 (7th Cir. 2012) (*citing Douglas v. Monroe*, 743 N.E.2d 1181, 1185-86 (Ind. App. Ct. 2001) ("A would-be client's unilateral belief cannot create an attorney client relationship."). Instead, "there must be evidence of a consensual relationship, existing only after both the

---

[5] In their Reply brief accompanying this objection, Defendants attempt to introduce additional evidence of the supposed attorney-client relationship that was not presented to the Magistrate Judge. It is well-established, in reviewing an objection to a Magistrate Judge's order, the Court will only consider the evidence that was submitted to the Magistrate Judge. *See, e.g. Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 1013952, at *2 (S.D. Ind. Mar. 9, 2015) ("[T]he Court must only consider arguments and evidence presented to the Magistrate Judge. Given that the Court is reviewing the Magistrate Judge's Order, reliance on arguments or evidence not presented to the Magistrate Judge is impermissible.").

attorney and client have consented to its formation." *Rosenbaum*, 692 F.3d at 601

(quoting *Querrey & Harrow, Ltd. v. Transcon. Ins. Co.*, 861 N.E.2d 719, 724–25 (Ind.

App. Ct. 2007)). No such evidence was ever presented to the Magistrate Judge.

Accordingly, this objection is **overruled.**

    B. *The Magistrate Judge Did Not Commit Clear Error in Holding that Greenberg Traurig's Representation of Bureau Veritas Did Not Extend to OneCIS*

Defendants' final objection is that the Magistrate Judge erroneously concluded that

Greenberg Traurig does not represent OneCIS "by virtue of its ongoing representation of

Bureau Veritas' family of companies[.]" In advancing this objection, Defendants invoke

comment 34 to Rule 1.7, which provides:

> A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary . . . Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

The Magistrate Judge determined that no circumstances exist here to warrant a

departure from the general rule described in comment 34 that an attorney-client

relationship between a law firm and one corporation within a corporate family is not

imputed to other corporations within the family's structure. Defendants object to this

ruling, specifically arguing that the Magistrate Judge should have recognized that the

corporations within the Bureau Veritas family are so "interrelated" that the representation

of one affiliate constitutes the representation of all affiliates. Defendants contend that the

18

Magistrate Judge committed clear error when she failed to apply a doctrine called the "corporate affiliate doctrine" to determine whether the attorney-client relationship between McGuire Woods and Bureau Veritas includes OneCIS. This doctrine "looks generally to the high degree of operational commonality and financial interdependency between two companies in determining whether they are one-and-the-same for purposes of finding a representational conflict." *Keefe Commissary Network, LLC. v. Beazley Ins. Co., Inc*., 2020 WL 4673782, at *4 (E.D. Mo. Aug. 12, 2020) (internal quotations omitted).

Our research fails to disclose any instances in *any* court in Indiana where this doctrine was applied. Defendants' entire argument hinges, in fact, on non-binding cases from outside our jurisdiction. Defendants have been unable to direct us to a single case from a federal or state court in Indiana adopting or applying the corporate affiliate doctrine. Accordingly, we are from being persuaded that the Magistrate Judge's dismissal of this argument was contrary to law.

The objection is **overruled.**

## CONCLUSION

Defendants' Motions for Reply, [Dkt. 46, 47], and Plaintiff's Motions for Surreply, [Dkt. 48, 49], are **granted.** Defendants' Objections, [Dkt. 42, 43], to the Magistrate Judge's Orders, [Dkt. 39, 40], are **overruled.**

IT IS SO ORDERED.

Date: 12/16/2020

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

19

Distribution:

Robert H. Bernstein
GREENBERG TRAURIG LLP
bernsteinrob@gtlaw.com

Jackie R. Clowers
APPLEGATE FIFER PULLIAM
jclowers@afpfirm.com

Stephanie Lauren Grass
PAGANELLI LAW GROUP
stephanie@paganelligroup.com

Yasser A. Madriz
MCGUIRE WOODS LLP
ymadriz@mcguirewoods.com

Meghaan C. Madriz
MCGUIRE WOODS LLP
mmadriz@mcguirewoods.com

A. Wolfgang McGavran
MCGUIRE WOODS LLP
wmcgavran@mcguirewoods.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

Michael J. Slocum
GREENBERG TRAURIG LLP
slocumm@gtlaw.com