UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

THE HARTFORD STEAM BOILER           )
INSPECTION AND INSURANCE COMPANY,   )
                                    )
            Plaintiff,              )
                                    )
        v.                          )      No. 4:20-cv-00117-SEB-DML
                                    )
MICHAEL CAMPBELL,                   )
KIAH JACOBS,                        )
ONECIS INSURANCE COMPANY,           )
                                    )
            Defendants.             )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff The Hartford Steam Boiler Inspection and Insurance Company ("HSB")
initiated this action on June 1, 2020, charging Defendants with violations of the Defend
Trade Secrets Act, 18 U.S.C § 1836; the Indiana Uniform Trade Secrets Act, Ind. Code. §
24-2-3-1, breach of contract, and various other business-related torts. Now before the
Court is Defendants' Motion to Dismiss, [Dkt. 8], filed pursuant to Federal Rule of Civil
Procedure 12(b)(6). For the reasons set forth herein, this motion is **granted in part and
denied in part.**

## Factual Background

### I.      HSB's Operations in the Specialty Insurance Industry

HSB's complaint presents the following recitation of facts, which we accept as true
in ruling on Defendants' Motion to Dismiss.[1]

---

[1] In opposing the Motion to Dismiss, HSB has attached to its briefing several exhibits, including
affidavits from its representatives, in an attempt to bolster its factual allegations against

1

HSB is "engaged in the business of equipment breakdown insurance and other specialty insurance coverages, inspection services, lost reduction and engineering-based risk management for businesses, homes and farms." The majority of HSB's clients include manufactures and sellers of various "pressure-retaining vessels such as air tanks, propane tanks, boilers, and other such industrial machines." In serving these clients, HSB provides third-party inspection and related services to its commercial clients. HSB assists its clients in avoiding losses while also providing to them insurance to allow for the prompt recovery of those losses that do occur. This industry is highly competitive; indeed, HSB aggressively competes with equipment breakdown insurance providers, such as Defendant OneCIS Insurance Company ("OneCIS"), "throughout the United States and beyond."

To provide high quality services to its clients, HSB expends considerable resources training its "Authorized Inspectors," who join HSB first as "Authorized Inspector Trainees." Prior to becoming Authorized Inspectors, trainees must receive a "Commission" from the "National Board of Boiler and Pressure Vessel Inspectors ("Board"). Receiving a Commission requires each trainee to satisfy the Board's educational, experience, employment, and examination prerequisites. This process

---

Defendants. This material is not properly before the Court on the question of whether the *Complaint* adequately alleges cognizable claims. *Arcelormittal Ind. Harbor LLC v. Amex Nooter*, LLC, 194 F. Supp. 3d 804, 811 (N.D. Ind. 2016) ("For purposes of ruling on the motion brought under Rule 12(b)(6), the Court does not consider those matters offered by the parties in support of their brief that are outside the Complaint."). If HSB believed that the purported newly discovered facts contained in these exhibits were vital to its causes of action, it should have filed an amended pleading. *See* FED. R. CIV. P. 15.

typically takes six months to complete. In addition, candidates seeking a Commission must successfully complete the National Board Authorized Inspector Course and pass the Authorized Inspector Commission Exam. HSB reimburses its trainees for all reasonable expenses incurred while they pursue their Commissions. In total, HSB typically invests $80,000 to recruit, hire, and train each individual trainee before he or she can begin generating billable work on HSB's behalf. Even after an Authorized Inspector Trainee attains Commission, HSB continues to train and develop its inspectors for endorsements and specialized qualifications.

Once promoted, Authorized Inspectors are charged with developing and maintaining HSB's customer relationships. To ensure its customers' needs are satisfied, HSB assigns an Authorized Inspector to each customer to address that customer's service needs for the duration of its relationship with HSB. The Authorized Inspectors are often the customers' primary point of contact at HSB. Accordingly, HSB encourages its Authorized Inspectors to develop close relationships with customers.

In performing their duties, Authorized Inspectors are required to maintain detailed logs for each customer, referred to as "Bound Diaries," cataloging certain activities (e.g., inspections, reviews, and other services) that the Authorized Inspector has performed for that customer. HSB believes that the Bound Diaries contain and constitute confidential and trade secret information which is of substantial proprietary value to HSB. The Bound Diaries explicitly and conspicuously state that the information contained therein is HSB's property and is for internal use only. The Bound Diaries further admonish that the information may not be reproduced or distributed without HSB's written permission.

3

In addition to the Bound Diaries, HSB maintains an electronic database, referred to as "ESIS" (Engineering Services Information System), which tracks additional proprietary data concerning HSB's confidential customer-specific services. The data housed in ESIS is likewise the property of HSB. HSB ensures the confidentiality of such information by requiring a password to access ESIS. Further, as the information on ESIS is highly confidential once an employee accesses this database through an authorized password, the employee's access is limited to information relevant to that employee and his/her customers.

HSB maintains that its Bound Diaries and ESIS database provide HSB "a distinct business advantage over its competitors, and both contain and constitute proprietary, confidential and trade secret information." If a competitor were to unlawfully gain access to HSB's proprietary information contained within either the Bound Diaries or the ESIS database, or if these competitors were to improperly hire away HSB's inspectors to capitalize on existing relationships between these inspectors and HSB's customers, HSB alleges that it would lose the competitive advantage that it has created, built, and developed in its 150 years of operation.

## II. The Individual Defendants' Employment with HSB

On February 15, 2013, HSB hired Defendant Michael Campbell (Mr. Campbell) as an Authorized Inspector Trainee. From this date until his resignation from HSB on May 8, 2020, Mr. Campbell directly serviced more than 100 HSB clients. During the course of Mr. Campbell's employment with HSB, HSB devoted substantial resources to training him and providing him with industry experience and expertise.

4

HSB hired Defendant Kiah Jacobs ("Mr. Jacobs") as an Authorized Inspector Trainee on October 14, 2015. Mr. Jacobs directly serviced more than 50 HSB clients during his employment with HSB until his resignation on April 3, 2020. Similar to Mr. Campbell, Mr. Jacob was the recipient of substantial resources invested by HSB in the form of training and experiences.

In their respective positions, Mr. Campbell and Mr. Jacobs (collectively, the "Individual Defendants") were responsible for communicating with HSB's current and potential customers and facilitating their utilization of HSB's services. HSB "placed a high level of trust and confidence" in the Individual Defendants, granting to each of them unique credentials for access to HSB's confidential, proprietary, and trade secret information contained in the ESIS.

As conditions of their employment, the Individual Defendants entered into employment agreements with HSB. These agreements contained the following covenant:

> That for a period of six months after termination of employment with the Company, when said termination is occasioned by the Employee, the Employee will not accept employment in any of the states, commonwealths, territories or possessions of the United States of America; or from any company or organization whose corporate headquarters is located within the states, commonwealths, territories or possessions of the United States of America, if such employment is offered because of the knowledge, skill or credentials obtained as a result of the aforementioned training.

[Dkt. 9, Exh. A, the "Restrict Covenant Agreement"). In sum, the Individual Defendants agreed not to accept any competitive employment anywhere in the United States for a period of six months following their employment with HSB, if such

5

employment was offered because of the knowledge, skill, or credentials obtained through HSB's specialized training.

Because Mr. Jacobs was granted additional access to highly confidential and proprietary information belonging to HSB, he also entered into a "Proprietary Information and Invention Assignment Agreement" ("PIIAA"). Pursuant to the PIIAA, Mr. Jacobs agreed that he would not use or disclose to anyone not affiliated with HSB any confidential, proprietary or trade secret information obtained through his employment with HSB at any time, without HSB's express permission. Mr. Jacobs promised to maintain HSB's trade secrets and other confidential information with "strict secrecy." Section 2b of the PIIAA specifically provides:

> (a) At the termination of your employment, or at any other time as may be requested, all memoranda, diaries, notes, records, drawings, sketches, plans or other documents (whether in hard copy or electronic format) relating, directly or indirectly to Confidential Information are to be delivered to [the Company] without retaining any copies, notes or excerpts of such documents.

[Comp. ¶ 44].

### III.   The Individual Defendants' Resignations from HSB

On February 7, 2020, Mr. Campbell submitted his notice of resignation to HSB, explaining that he was leaving the company to care for his ailing parents. In actuality, he was leaving HSB to join its competitor, OneCIS. Indeed, he had accepted his position with OneCIS just one day before the submission of his notice of resignation. His last day of employment with HSB was May 8, 2020.

One month later, on March 12, 2020, Mr. Jacobs submitted his notice of resignation, identifying April 3, 2020 as his final day of employment. Mr. Jacobs

likewise had accepted employment with OneCIS. However, he had also concealed this fact, instead indicating that he was resigning from HSB to pursue the creation of a fireworks company.

Shortly after Mr. Campbell's departure from HSB in May 2020, the company conducted a preliminary review of the messages stored on Mr. Campbell's HSB-issued cell phone. HSB's review of Mr. Campbell's phone messages revealed that, simultaneously with accepting OneCIS's offer of employment, Mr. Campbell had notified Jerry Byers, OneCIS's Director of Southeastern Region, that he and Mr. Jacobs had executed the Restrictive Covenant Agreements with HSB. OneCIS nonetheless decided to hire Mr. Campbell and Mr. Jacobs and continues to employ them.

In the weeks that followed his notice of resignation but while he was still employed with HSB, Mr. Campbell provided Mr. Byers with sensitive pricing and revenue information belonging to HSB, allegedly enabling OneCIS to gain improper insight into HSB's business. During this same time period, Mr. Campbell and Mr. Jacobs conspired to retain confidential HSB information to share with OneCIS. For example, on May 4, 2020, after Mr. Jacobs had resigned from HSB but while Mr. Campbell was still in its employ, Mr. Jacobs informed Mr. Campbell that he had retained "a bunch of notes and paperwork" from HSB. Mr. Jacobs asked Mr. Campbell which of these materials Mr. Jacobs should keep and potentially provide to OneCIS, and Mr. Campbell instructed him to retain any Bound Diaries he might have. HSB alleges that Mr. Campbell and Mr. Jacobs kept these materials in order to use them for their advantage at OneCIS.

HSB further alleges that OneCIS induced Mr. Campbell and Mr. Jacobs to breach their contracts with and duties to HSB. Indeed, in the past two years, OneCIS has "targeted, recruited, and hired away at least ten of HSB's Authorized Inspectors and other employees." Its alleged goal in doing so is to benefit from the time and resources HSB has invested in its employees and ultimately to "turn these stolen HSB employees into stolen HSB customer relationships – and business."

Based on these facts, HSB alleges the following causes of action: (1) Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Indiana Uniform Trade Secrets Act, Ind. Code. § 24-2-3-1 (against all defendants); (2) Breach of Contract – Non-Compete Obligations under the Restrictive Covenant Agreements and Non-Disclosure Obligations under PIIAA (against the Individual Defendants); (3) Employee Piracy and Unfair Competition (against OneCIS); (4) Tortious Interference with Prospective Economic Advantage: HSB's Workforce (against all defendants); (5) Tortious Interference with Prospective Economic Advantage: HSB's Customers (against all defendants); (6) Breach of Fiduciary Duty and Duties of Loyalty (against the Individual Defendants); and (7) Conversion (against all defendants).

## Analysis

### I.      Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At minimum, a plaintiff is required to support its complaint with "some

specific facts." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Iqbal*, 556 U.S. at 678. How much specificity is required may vary from case to case, but "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley*, 671 F.3d at 616 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).

## II.  Discussion

Defendants move for the dismissal of all claims against them. We review each of their objections to HSB's Complaint in turn below.

### A.  HSB's Trade Secret Misappropriation Claims May Proceed

Count I of HSB's complaint alleges that Defendants have misappropriated HSB's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and the Indiana Uniform Trade Secrets Act, Ind. Code. § 1836 ("IUTSA"). Defendants seek dismissal of Count One, citing HSB's purported failure to allege specific instances of misappropriation.

The elements of a claim under the DTSA and IUTSA are similar; key to each is the existence of a trade secret and its misappropriation. Defendants do not contest the sufficiency of the Complaint in alleging the former; they contest only that the Complaint fails to adequately allege any misappropriation by Defendants.

The DTSA defines "misappropriation" as either the "acquisition of a trade secret of another . . . by improper means" or the "disclosure or use of a trade secret of another without express or implied consent. . . ." 18 U.S.C. § 1839(5)(A)-(B). Similarly, the IUTSA defines "misappropriation" as the "disclosure or use of a trade secret without consent by one who knew or had reason to know the trade secret was 'acquired under circumstances giving rise to a duty to maintain secrecy or limit its use' or derived from one who 'owed a duty to the person seeking relief to maintain its secrecy or limit its use.'" Ind. Code. § 24-2-3-1. Both the DTSA and IUTSA provide that "actual or threatened misappropriation" of trade secrets may be enjoined. 18 U.S.C. § 1836(a)(3)(A)(i); Ind. Code § 24-2-3-3(a).

HSB's Complaint alleges that the Individual Defendants, through their employment with HSB, gained access to HSB's trade secrets, including its Bound Diaries. Because Mr. Campbell and Mr. Jacob accessed and acquired HSB's trade secrets through legitimate means, that is, their employment with HSB, the parties do not dispute that the misappropriation analysis with respect to the Individual Defendants hinges on whether HSB adequately alleged the actual or threatened disclosure or use of its trade secrets without its consent. *See Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020).

To that end, the Complaint alleges that the Individual Defendants disclosed HSB's trade secrets, including its "customer lists" and its "customer and revenue/pricing information," to OneCIS. The Complaint further alleges that Mr. Campbell provided to Mr. Byers, an executive at OneCIS, "sensitive pricing and revenue information belonging to HSB."[2] In addition, the Complaint alleges that, on May 4, 2020, Mr. Jacobs, while employed at OneCIS, contacted Mr. Campbell, who, at that time, had accepted a position with OneCIS and was in his final week of employment at HSB. Mr. Jacobs informed Mr. Campbell that he had retained various documents from HSB and inquired with Mr. Campbell as to which he should keep and potentially share with OneCIS. Mr. Campbell directed Mr. Jacobs to keep "the Bound Diaries," indicating that he would "need" them.

We agree with HSB that these alleged facts sufficiently give rise to a reasonable inference of actual or threatened misappropriation of HSB's trade secrets. Though the Complaint may not be flooded with details as to the alleged misappropriation, it nonetheless sufficiently sets forth various categories of trade secrets that the Individual Defendants shared with OneCIS representatives, including Mr. Byers. In addition, the Complaint alleges that Mr. Campbell and Mr. Jacobs collaborated in the retention of HSB's Bound Diaries following their departure from OneCIS, which Mr. Campbell purported to "need." The reasonable inference arising from this factual allegation is that Mr. Campbell "needed" them for his work at his new employer and HSB's competitor,

---

[2] Defendants allocate a one-sentence footnote in their briefing to question whether these materials qualify as trade secrets. They fail, however, to articulate any analysis on this issue, and the Court will not craft an argument for them.

and that Mr. Jacobs facilitated this improper retention of the Bound Diaries, placing them at risk of misappropriation. These allegations sufficiently plead the misappropriation (or threatened misappropriation) of HSB's trade secrets at the hands of Defendants.

The cases invoked by Defendants do not support an alternative finding. In each of them, the complaints alleged only that defendants had access to or possession of trade secrets. *Packaging Corp. of Am.*, 419 F. Supp. 3d at 1066 ("But even if the Court infers Croner's possession of the information in question, mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets[.]"); *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792, 808, 2020 WL 1934178 (N.D. Ind. 2020) ("[H]aving had access to trade secrets and misappropriating trade secrets are two entirely different allegations."); *Indus. Packaging Supplies, Inc. v. Channell*, No. 18-CV-00165, 2018 WL 2560993, at *2 (N.D. Ill. 2018) (same). The Complaint in this case goes well beyond mere possession or access.

Accordingly, HSB's DTSA and IUTSA claims may proceed, and the motion to dismiss Count I is denied.

B. <u>HSB's Breach of Contract Claims (Count II) Are Dismissed</u>

Count II of HSB's Complaint alleges that the Individual Defendants have breached their non-compete obligations outlined in the Restrictive Covenant Agreements. It further alleges that Mr. Jacobs violated his non-disclosure obligations under the PIIAA. Defendants move for the dismissal of both sets of breach of contract claims.

1. *HSB's Claim That the Individual Defendants Breached Their Restrictive Covenant Agreements Requires Dismissal Without Prejudice*

With respect to the alleged breaches of the Restrictive Covenant Agreements, Defendants contend that these claims must be dismissed on the grounds that the non-compete provisions contained therein are unenforceable under Connecticut law.[3]

In reviewing the enforceability of restrictive covenant agreements such as the one at issue here, Connecticut law provides that "[a] covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable." *New Haven Tobacco Co. v. Perrelli*, 559 A.2d 715, 717 (1989); *see also DeLeo v. Equale & Cirone, LLP*, 202 Conn. App. 650, 672 (2021). To determine reasonableness in this context, we evaluate the following five criteria:

> (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests.

*DeLeo*, 202 Conn. App. at 672. This five-prong analysis "is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to

---

[3] The Restrictive Covenant Agreements include the following choice of law provision: "[T]he terms of this Agreement shall be governed and construed in accordance with the laws of the State of Connecticut." The parties agree that this provision controls here. We note as well that we "must look to the conflict-of-laws rules of the forum state for the applicable substantive law." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Under Indiana law, where, as here, the parties stipulate in their contract as to what law governs, courts are to apply the law of the forum chosen by the parties. *Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010).

render the covenant unenforceable." *Id.* (internal quotations omitted) (citing *New Haven*, 559 A.2d at 717).

Defendants contend that the non-compete obligations are unreasonable on several grounds, including that they "exceed any legitimate business interest of HSB, are geographically overbroad, are overly restricting on Campbell and Jacobs, and harm the public." [Def. Br. at 9]. We quote again the terms of the non-compete provision at issue:

> That for a period of six months after termination of employment with the Company, when said termination is occasioned by the Employee, the Employee will not accept employment in any of the states, commonwealths, territories or possessions of the United States of America; or from any company or organization whose corporate headquarters is located within the states, commonwealths, territories or possessions of the United States of America, if such employment is offered because of the knowledge, skill or credentials obtained as a result of the aforementioned training.

[Dkt. 9, Exh. A].

We review first Defendants' contention that the geographic scope of the non-compete provision is unreasonable in that applies to work throughout the United States.

"The general rule is that the application of a restrictive covenant will be confined to a geographical area which is reasonable in view of the particular situation." *Braman Chem. Enterprises, Inc. v. Barnes*, 42 Conn. L. Rptr. 547 (Conn. Super. Ct. Dec. 12, 2006). Geographic restrictions should be "narrowly tailored to the plaintiff's business situation." *Id.* The reasonableness of a geographic restriction in a covenant not to compete is "intertwined" with the reasonableness of the covenant's time restrictions. *Van Dyck Printing Co. v. DiNicola, 43 Conn.Sup.* 191, 648 A.2d 898 (1993). Broad

geographic restrictions may thus be reasonable if the duration is short; longer periods may be reasonable if the geographic area is small. *Id.*

As Defendants explain, the Complaint lacks any allegations as to the geographic area served by the Individual Defendants. From what can be inferred from the Complaint's jurisdictional statements, the Individual Defendants' "engaged in the wrongful conduct described [herein] in the State of Indiana." There is thus no basis in the Complaint to justify this nationwide ban on work, say Defendants.

Plaintiffs maintain that Connecticut law permits nationwide (and even worldwide) geographic restrictions, noting that Connecticut courts have rejected a "*per se* invalidation of a noncompete provision on the ground that it imposes a worldwide geographic restriction." *Ineo, LLC v. Lenehan*, 66 Conn. L. Rptr. 72 (Conn. Super. Ct. Feb. 20, 2018).

Defendants, however, are not seeking to strike down the geographic restriction on the grounds that it is *per se* unreasonable. Instead, they assert that the Complaint fails to plead sufficient facts supporting the reasonableness of the nationwide restriction in this particular situation. We agree with Defendants on this issue.

In determining whether a geographical restriction is narrowly tailored to protect a plaintiff's legitimate interests, Connecticut courts look to the geographic area where the defendant serviced plaintiff's business or customers as well to the area where the plaintiff's customers are located or its business is operating. *Braman Chem. Enterprises, Inc. v. Barnes*, 42 Conn. L. Rptr. 547 (Conn. Super. Ct. Dec. 12, 2006) (collecting cases). For example, in *Van Dyck Printing Co. v. Dinicola,* the court upheld a state-wide

restriction as reasonable where it effectively foreclosed employment in the area "consisting of the plaintiff's actual customers" that had been "formerly serviced by the defendant." 648 A.2d at 902; *see also New Haven*, 559 A.2d at 715. In contrast, a 50-mile wide radius was struck done as unreasonable where it covered "well over two million prospective [] customers," only 700 of which were serviced by the defendant. *Braman*, 42 Conn. L. Rptr. at 547.

Here, as Defendants have correctly explained, the facts in the Complaint do not provide adequate justification for a *nationwide* restriction. There are no allegations establishing the regions or areas serviced by the Individual Defendants. Though HSB alleges that it competes "throughout the United States and beyond," the Complaint provides no insight as to *where* in the world HSB is actually servicing its clients, nor any indication that the Individual Defendants had any relationship with HSB's clients across the United States such that HSB's interests would be at risk but for a nationwide restriction. *See Braman*, 42 Conn. L. Rptr. at 547; *Van Dyck*, 648 A.2d at 902. We note as well that the willingness of Connecticut courts to uphold such broad restrictions usually occurs in the context of computer and internet-drive commerce where narrower geographic restraints would "provide no effective protection." *Friese v. Fadner Media Enterprises, LLC*, 2017 WL 1238436, at *6–7 (Conn. Super. Ct. Jan. 18, 2017) ("The courts that have upheld relatively narrow geographic limitations have generally been dealing with businesses not engaged in internet or global commerce, such as barber shops, beauty parlors, and insurance agents"); *id.* ("[T]he law has come to acknowledge the inapplicability of geographic bounds to companies that do business on a national or

international basis . . . This trend is particularly applicable to a business operating on the internet.). *See also Ineo, LLC v. Lenehan*, 66 Conn. L. Rptr. 72 (Conn. Super. Ct. Feb. 20, 2018) ("In this case, in light of the worldwide nature of the plaintiff's business and clientele, as well as the fact that it is technologically based, the court does not find the global scope of the restrictive covenant set forth in the Agreement to be unreasonable."). The Complaint presented here proffers no allegation that HSB's business is internet or technology based. Instead, HSB is "engaged in the business of equipment breakdown insurance and other specialty insurance coverages[.]" [Compl. ¶ 2].

Though the duration of the covenant is not challenged as unreasonable (and, in fact, durations of this length have on occasion been recognized as much), the Complaint nonetheless fails to tell us enough about the nature of the Individual Defendants work such that we could determine if the geographic scope is reasonable based on how it intertwines with the durational restriction. *Braman*, 42 Conn. L. Rptr. at 547; *Van Dyck*, 648 A.2d at 902.

For these reasons, we agree that the Complaint does not provide sufficient facts to justify the geographic scope of the non-compete provision and thus the Restrictive Covenant Agreements appear unenforceable. We need not review Defendants' remaining challenges to the reasonableness of the non-compete provision at this time. Count II of the Complaint is dismissed to the extent it alleges that the Individual Defendants have breached their obligations contained within the Restrictive Covenant Agreements. This claim is dismissed without prejudice so that HSB may plead additional facts which support the justification of the nationwide restriction, if and as appropriate.

### 2. *HSB's Claim That Mr. Jacobs Breached the PIIAA Is Dismissed*

In addition to charging the Individual Defendants with breaching their non-compete obligations, Count I of HSB's complaint alleges that Mr. Jacobs breached his non-disclosure obligations under the PIIAA. Section 2b of this provision provides:

> (a) At the termination of your employment, or at any other time as may be requested, all memoranda, diaries, notes, records, drawings, sketches, plans or other documents (whether in hard copy or electronic format) relating, directly or indirectly to Confidential Information are to be delivered to [the Company] without retaining any copies, notes or excerpts of such documents.

The Complaint alleges that Mr. Jacobs breached his obligations under this provision by retaining, following his departure from HSB, "a bunch of notes and paperwork" and by impermissibly disclosing proprietary, confidential, and trade secret information to OneCIS. To prevail on its breach of contract claim, HSB must show: "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Bouchard v. Sundberg*, 834 A.2d 744, 751 (Ct. App. 2003).

Defendants seek dismissal of this claim, arguing that HSB had not sufficiently pled that Mr. Jacobs breached his contractual duties. Defendants also assert that HSB has not alleged that it has suffered damages arising from any breaches.

HSB does not dispute that its Complaint fails to allege that HSB has sustained damages caused by these purported breaches. Accordingly, Count I is dismissed to the extent it seeks to hold Mr. Jacobs liable for breaching the PIIAA, again without prejudice.

C. <u>HSB's Claims of "Employee Piracy and Unfair Competition" (Count III) Are Dismissed</u>

We next address Defendants' contention that HSB's claims for "Employee Piracy and Unfair Competition" (Count III) must be dismissed.

As to "employee piracy," Defendants contend that there is no Indiana case law "establishing, discussing, or even referencing such a cause of action." Defendants thus request the dismissal of HSB's claim of "employee piracy." The Court's research also fails to disclose the existence of such a tort, and HSB's briefing omits any reference to the term "employee piracy."[4] Accordingly, we dismiss Count III to the extent it seeks to hold Defendants liable for the non-existent tort of "employee piracy."

The second cause of action in Count III is a claim of "unfair competition." Defendants assert that this claim simply mirrors HSB's tortious interference claims. Because the Complaint does not set forth facts giving rise to an independent unfair competition claim, Defendants request dismissal of this cause of action.

HSB does not appear to dispute that its unfair competition claim is merely another take on its tortious interference claims. In response to Defendants challenges on this

---

[4] HSB's briefing includes vague references to "employee raiding" as a form of "unfair competition." To the extent it is asserting that "employee raiding" is synonymous with "employee piracy," this does not save its "employee piracy" from dismissal. *Genesys Telecomms. Labs., Inc. v. Morales*, No. 1:19-cv000695-TWP-DML, 2019 WL 5722225, at *16 (S.D. Ind. Nov. 5, 2019) ("Indiana does not recognize 'corporate raiding' as an independent cause of action[.]") (internal quotations omitted); *Howmedica Osteonics* Corp. v. DJO Glob., Inc., No. 1:17-cv-00938-SEB-TAB, 2018 WL 3130969, at *7 (S.D. Ind. Mar. 15, 2018) (same).

claim, HSB primarily recites boilerplate statements related to unfair competition, a doctrine which "does not describe a single course of conduct or a tort with a specific number of elements" but "instead describes a general category into which a number of new torts may be placed when recognized by the courts." *Panther Brands, LLC v. Indy Racing League*, LLC, 126 N.E.3d 898, 908 (Ind. Ct. App.), *reh'g denied* (Aug. 12, 2019), *trans. denied*, 138 N.E.3d 961 (Ind. 2019).

What HSB fails to do is explain how its unfair competition claim is anything but duplicative of its tortious interference claims, particularly its claim that Defendants tortiously interfered with HSB's workforce.  Indeed, Plaintiff appears to *agree* that its allegations of "unfair competition" fall within this claim, [*See* Pl. Br., p. 23], and, from our careful review of the Complaint, this claim presents no legal theory independent of that which is articulated in HSB's tortious interference with its workforce claim. Accordingly, we agree with Defendants that Count III should be dismissed in its entirety. *See, e.g. Howmedica*, 2018 WL 3130969, at *7 (dismissing plaintiff's claim where it was duplicative of another claim, but allowing plaintiff to pursue the theory of the first claim within the context of its latter, surviving claim); *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064, 2011 WL 129637 (S.D. Ind. 2011) ("[T]he tort of unfair competition has been considered a subspecies of the class of torts known as tortious interference with business or contractual relations."); *see Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (same).[5]

---

[5] This is not to say that a claim of unfair competition is *always* a subset of a tortious interference claim or that the former can *never* be pursued independently of the latter. *See Howmedica*, 2018

D. <u>HSB's Claims for Breach of Fiduciary Duty Are Dismissed (Count VI)</u>

Defendants next seek dismissal of HSB's claims that the Individual Defendants have breached their fiduciary duties of loyalty to HSB (Count VI).

In Indiana,[6] "an employee owes his employer a fiduciary duty of loyalty." *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 768 (Ind. Ct. App. 2011). Consistent with one's duty of loyalty, an employee may not "use confidential information specific to his employer's business before the employee leaves his employee." *Id.*

The Individual Defendants contend that HSB's claims that they improperly disclosed its confidential and proprietary information in breach of their fiduciary duties are preempted by the IUTSA. Indeed, the IUTSA provides: "The chapter displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." Ind. Code. § 24-2-3-1(c). The IUTSA thus preempts any common law claims for the misappropriation of trade secrets. *HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924 (Ind. Ct. App. 2012); *Tecnomatic, S.P.A. v. Remy, Inc.*, 954 F. Supp. 2d 860, 869, 2013 WL 3188814 (S.D. Ind. 2013). The Indiana Court of Appeals has further held that, with exception for breach of contract claims, the IUTSA

---

WL 3130969, at *7. Here, however, HSB has failed to differentiate between the two theories such that both can survive independently at this juncture.
[6] The parties agree that Indiana law governs HSB's common law claims.

"abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status." *Id.*; *Konecranes, Inc. v. Davis*, 2013 WL 1566326, at *4 (S.D. Ind. Apr. 12, 2013) (discussing *HDNet LLC*).

We need not engage in any longform analysis to hold that this claim must also be dismissed. To the extent that HSB is alleging that the Individual Defendants breached their fiduciary duties of loyalty by misappropriating trade secrets, that claim is obviously preempted by the IUTSA. *See, e.g. id.*; *Genesys Telecommunications Labs., Inc. v. Morales*, 2019 WL 5722225, at *15 (S.D. Ind. Nov. 5, 2019).  To the extent HSB believes that this claim is outside the purview of the IUTSA on the grounds that not all "confidential and proprietary information" rises to the level of trade secrets, [Pl. Br., p. 32], the Indiana Court of Appeals has expressly rejected the legitimacy of such a claim. *HDNet LLC*, 972 N.E.2d at 924. It is beyond dispute that both of the aforementioned theories are not viable in light of *HDNet:*

> A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable.

*Tecnomatic,* 954 F. Supp. 2d at 869 (quoting *HDNet LLC*, 972 N.E.2d at 924).[7]

---

[7] For these same reasons, we dismiss HSB's conversion claim (Count VII), which is based on the alleged retention of HSB's "trade secrets and confidential, proprietary and/or non-public information[.]"Though Indiana courts have recognized that conversion claims may not be preempted by the IUTSA where the possessions purportedly converted were "tangible property" that have "some intrinsic value apart from the information contained within," (for example, "three-dimensional computer models for modular homes"), no such allegations exist here. *See Remy, Inc. v. Tecnomatic S.P.A., 2014 WL 2882855*, at *11 (S.D. Ind. June 24, 2014).

Any reference to *HDNet* is conspicuously absent from HSB's briefing (though Defendants placed HSB on notice of this case), which relies instead on cases which preceded this pivotal decision.

We also grant Defendants' request to dismiss HSB's claims that the Individual Defendants breached their fiduciary duties of loyalty by "soliciting HSB employees to work for OneCIS" and by "failing to inform HSB of OneCIS's solicitations and scheme to raid HSB's employees." We agree with Defendants that these claims are entirely conclusory and lack any factual underpinnings in the complaint and therefore must be dismissed. *Iqbal*, 556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Rules 8 and 12(b)(6)).[8]

For these reasons, we dismiss Count VI of the Complaint.

E.  <u>HSB's Claims for Tortious Interference (Count IV & Count V) Must Also Be Dismissed Without Prejudice</u>

We turn finally to Defendants' challenges to HSB's claims against OneCIS and the Individuals Defendants for "tortious interference with prospective economic advantage: HSB's workforce" (Count IV) and "tortious interference with prospective economic advantage: HSB's customers" (Count V). In sum, Count IV alleges that Defendants intentionally caused HSB employees to leave so that OneCIS could reap the benefits of

---

[8] We note that HSB does not attempt to defend the sufficiency of its Complaint with respect to this issue, relying instead on extraneous materials submitted with its briefing.

HSB's investments in them. Count V alleges the same, but with respect to HSB's customers.

Under Indiana law, a claim for tortious interference with a business relationship, whether employees or customers, requires proof of the following elements: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference in the relationship; (4) the absence of justification; and (5) damages resulting from the defendant's interference. *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992). In addition to these five elements, the plaintiff must also prove "some independent illegal action." *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Defendants contend that the Complaint has not pled sufficient facts to support the fourth element, that is, absence of justification, nor the presence of any independent illegal action. We find the latter argument to be dispositive here.

Under a tortious interference claim, "illegal action" need not be "criminal action." Rather, sufficiently "wrongful" action will fulfill this requirement. *Meridian*, 763 F. Supp. 2d at 1063. "Wrongful" action includes "unscrupulous behavior based upon prevailing societal and business standards of morality and ethics." *Techcom, Inc. v. Telematrix, LLC*, 903 N.E.2d 187 (Ind. Ct. App. 2009).

Allegations of breach of contract do not satisfy the independent illegal action requirement. *Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 797 (S.D. Ind. 2011) (collecting cases). In addition, HSB has stated that its tortious interference

claims "are separate and apart from, and unrelated to, its misappropriation of HSB's trade secrets." [Compl. ¶ 98]. According to Defendants, no other potential allegations of wrongful or illegal conduct can be gleaned from the Complaint.

HSB maintains that it has sufficiently pled this requirement. It first asserts that breaches of one's fiduciary duty, as well as a competitor's inducement of such breaches, is sufficient to satisfy this requirement. Though HSB's legal assertion may be true, it ignores the fact that we have dismissed its claims for breach of fiduciary duty for their failure to state a claim on which relief could be granted. We note as well that there is no specific allegation in the Complaint that OneCIS induced the Individual Defendants to steal or disclose HSB's confidential information. Similarly, the Complaint does not tether the tortious interference claims to any illegal misconduct in the form of fiduciary duty breaches.

HSB also asserts that OneCIS's acts of "unfair competition" were wrongful and illegal. To that end, HSB argues that OneCIS unfairly competed when it supposedly "raided" HSB's employees. HSB directs us to the fact that OneCIS, over the past two years, has hired ten former HSB employees. HSB pleads no specific facts, however, as to how these employees were "targeted" or "poached" by OneCIS, nor does it allege that OneCIS induced or encouraged these unidentified employees to breach their contractual or fiduciary duties to HBS.[9] The mere retention of employees from one company cannot

---

[9] Though the Complaint alleges that OneCIS induced the Individual Defendants to breach their contractual duties to HSB, HSB's briefing on this particular issue does not incorporate this allegation or otherwise elaborate on any alleged raiding of the Individual Defendants by OneCIS.

be sufficient to establish unfair employee raiding rising to the level of wrongful and illegal conduct. *See, e.g., Genesys*, 2019 WL 5722225, at *17 (holding that employee raiding sufficiently pled where defendant allegedly encouraged plaintiff's employees to engage with and contribute to defendant's company contrary to plaintiffs' contractual duties); *CDW LLC v. NETech Corp.*, 722 F. Supp. 2d 1052, 1064 (S.D. Ind. 2010) (reviewing allegations of defendant's strategy to target plaintiff's employees and incentivize them to leave plaintiff); *see also The Finish Line, Inc. v. Foot Locker, Inc.*, 2006 WL 146633, at *9 (S.D. Ind. Jan. 18, 2006) (rejecting claim of employee raiding where there was no indication that defendant had done anything more than sought out talented individuals who happened to be at-will employees of plaintiff).[10]

For the reasons explicated above, Counts IV and V are dismissed without prejudice.

## CONCLUSION

Defendants' Motion to Dismiss [Dkt. 8] is **granted in part and denied in part.** It is **denied** with respect to Count I. It is **granted** in all other respects. Counts II through Counts VII are dismissed without prejudice with leave to replead in twenty-one days.

IT IS SO ORDERED.

Date:  _____3/31/2021_____          _Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

---

[10] We note again that HSB, in crafting its arguments, has relied on facts not actually alleged in the Complaint, but instead presented in its briefing and the attachments thereto which cannot be considered by the Court at this juncture.

Robert H. Bernstein
GREENBERG TRAURIG LLP
bernsteinrob@gtlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
tbetz@taftlaw.com

Jackie R. Clowers
APPLEGATE FIFER PULLIAM
jclowers@afpfirm.com

Stephanie Lauren Grass
PAGANELLI LAW GROUP
stephanie@paganelligroup.com

Meghaan C. Madriz
MCGUIRE WOODS LLP
mmadriz@mcguirewoods.com

Yasser A. Madriz
MCGUIRE WOODS LLP
ymadriz@mcguirewoods.com

A. Wolfgang McGavran
MCGUIRE WOODS LLP
wmcgavran@mcguirewoods.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

Michael J. Slocum
GREENBERG TRAURIG LLP
slocumm@gtlaw.com